**HARRIS COUNTY APPRAISAL DISTRICT, Petitioner,**

v.

**TEXAS WORKFORCE COMMISSION, Respondent**

No. 16-0346

Supreme Court of Texas.

Argued March 23, 2017

OPINION DELIVERED: May 12, 2017

Eric C. Farrar, Brian J. Begle, John J. Hightower, Paula Johnson Alexander, Olson & Olson, LLP, Houston, for Petitioner.

Alison D. Andrews, Brantley D. Starr, Jack Hohengarten, James E. Davis, Jeffrey C. Mateer, W. Kenneth Paxton Jr., Austin, for Respondent.

Justice Johnson delivered the opinion of the Court.

In this case we consider whether several members of the Harris County Appraisal Review Board are, or were, employed by the Harris County Appraisal District under provisions of the Texas Unemployment Compensation Act such that when their terms of service ended or their workload was reduced, they became eligible for unemployment compensation benefits. The Texas Workforce Commission determined that they were. The district court disagreed and set the Commission's decisions aside. The court of appeals reversed.

We affirm the judgment of the court of appeals.

## I. Background

The Harris County Appraisal District (HCAD) is statutorily tasked with appraising property in Harris County for purposes of calculating ad valorem property taxes. TEX. TAX CODE § 6.01(b). Taxpayers may contest HCAD's valuation decisions before the Harris County Appraisal Review Board, which is an administrative entity with statutory authority to modify property appraisal valuations. *Id.* § 41.01(a). Applicants for Board positions submit their applications through HCAD, and members of the Board are appointed to two-year terms by the local administrative law judge. *Id.* § 6.41(d-1), (e). The Board members are paid by the hour for the time they work, and the amount they work is determined by how many valuation decisions are contested. *Id.* § 6.42(c). Members may serve a maximum of three consecutive terms. *Id.* § 6.412(e).

Several members of the Board served the maximum of three terms and then filed for unemployment compensation with the Texas Workforce Commission (TWC), alleging that they were last employed by HCAD. Several other members who were still serving on the Board, but whose hours had been reduced to the point that they were working only sporadically, also filed for benefits and indicated that HCAD was their employer. A total of fifteen persons [1] (collectively, claimants) filed claims. The TWC determined that each of the claims was valid and the claimants were entitled to compensation.

HCAD appealed to the TWC appeal tribunal, claiming that there was not and never had been an employment relationship between the claimants and HCAD under the Texas Unemployment Compensation Act's (TUCA) definition of employment. The appeal tribunal upheld the TWC's determinations.

HCAD then filed suits in the district court challenging the administrative determinations. The court consolidated the suits, and the parties filed competing motions for summary judgment. The TWC urged that HCAD was the claimants' last employer under section 201.041 of the Texas Labor Code and it correctly decided the

---

1. The claimants are Charles McKirahan, Valleda Crump, Ronald Hastik, Dempsey Wells, Michael Marshall, Diane Jobin, Monarchie Clay, Laura Bass, Melia Wichmann, Phil Ross, Janet Sheffield, Gerald Chissenberry, Reese Buggs, Forrest Cresswell, and Cynthia Spooner.

claimants qualified for unemployment compensation. HCAD urged two grounds in its motion. First, it argued that the claimants fell within an exception in TUCA for members of the judiciary. Second, it argued that the Texas Tax Code does not permit appraisal districts to exercise control or direction over appraisal review boards, thus the claimants were not its employees.

The district court denied the TWC's motion, granted HCAD's, and set aside the TWC's decisions awarding compensation. The TWC appealed.

The court of appeals reversed and reinstated the TWC's determinations. 488 S.W.3d 843, 846 (Tex. App.—Houston [14th Dist.] 2016). The court first determined that because HCAD paid the claimants for their services, a presumption of employment arose under the Labor Code. *Id.* at 849 (citing TEX. LAB. CODE § 201.041). It then determined that Board members were not subject to the members of the judiciary exemption in the Labor Code because the context of that statute indicates that the exemption should only reach members of the judiciary proper—i.e., judges—and not persons such as the claimants who engage in quasi-judicial functions. *Id.* at 850-51.

The court also considered HCAD's argument that the Tax Code both prohibits it from exercising any control over the Board and prevents HCAD employees from serving on the Board. *Id.* at 853-55. The court held that the Tax Code provisions were relevant, but not conclusive, and that the employment analysis is a factual one entailing a twenty-factor test derived from the common law and adopted by the TWC. *Id.* at 853. The crux of this common law test is whether the claimants are subject to the control and direction of HCAD. *Id.* at 855. The court concluded that substantial evidence supported the TWC's determinations under the proper deferential

standard of review as to several of the factors. *Id.* at 854.

In this Court, HCAD reprises the arguments it made in the court of appeals. It first argues that the court of appeals erred by concluding that the claimants do not meet the Labor Code's definition of "members of the judiciary." *See* TEX. LAB. CODE § 201.063(a). HCAD asserts that because Board members perform judicial functions, they substantively function as members of the judiciary. Additionally, HCAD argues that public policy supports this finding because Board members are expected to be neutral judges of property values. HCAD also argues that the court of appeals misinterpreted the relevant Tax Code provisions because the Legislature clearly forbids Board members from being employees of HCAD. Additionally, HCAD asserts that the TWC arbitrarily and unreasonably disregarded its own regulations in deciding that HCAD has a right to control Board members. Last, HCAD argues that the court of appeals misapplied the twenty-factor test for employment set out by the TWC's regulation because neither evidence nor a presumption reasonably supports the TWC's determinations that Board members are employees of HCAD.

In response, the TWC argues that the court of appeals was correct in affirming the TWC's determinations because substantial evidence supports the TWC's decisions. It maintains that Board members do not qualify as members of the judiciary and thus are not excepted from entitlement to unemployment compensation. Furthermore, the TWC argues the Tax Code provisions HCAD cites do not override, or even contradict, TUCA's own definition of "employment."

## II. Standard of Review

A trial court reviews the TWC's decision regarding unemployment benefits

by trial de novo to determine whether substantial evidence supports the TWC's ruling. TEX. LAB. CODE § 212.202(a); *Collingsworth Gen. Hosp. v. Hunnicutt*, 988 S.W.2d 706, 708 (Tex. 1998). Trial de novo of a TWC ruling "requires the court to determine whether there is substantial evidence to support the ruling of the agency, but the reviewing court must look to the evidence presented in trial and not the record created by the agency." *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986). The TWC's unemployment compensation decisions enjoy a presumption of validity, and the party seeking to set aside such a decision has the burden of showing that the decision is not supported by substantial evidence—that is, it is not supported by more than a scintilla of evidence. *City of Dallas v. Stewart*, 361 S.W.3d 562, 566 (Tex. 2012). A trial court may not set aside a TWC decision merely because it would have reached a different conclusion; rather, the court may do so only "if it finds that the [TWC's] decision was made without regard to the law or the facts and therefore was unreasonable, arbitrary, or capricious." *Collingsworth Gen. Hosp.*, 988 S.W.2d at 708. This methodology was purposefully designed by the Legislature so that agency decisions are afforded "significant deference," and a court is not allowed "to substitute its judgment for that of the agency." *See Stewart*, 361 S.W.3d at 566 (quoting *R.R. Comm'n v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995)). On appeal from summary judgment affirming the TWC's decision, we conduct a de novo review of the summary judgment evidence to determine whether, as a matter of law, substantial evidence supports the TWC's decision. *See Mercer*, 701 S.W.2d at 831.

■ In statutory construction matters, our review is de novo, although "an agency's interpretation of a statute it is charged with enforcing is entitled to 'serious consideration.'" *R.R. Comm'n v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). Under this serious consideration inquiry, we generally uphold an agency's interpretation of a statute, "so long as the construction is reasonable and does not conflict with the statute's plain language." *Id.* at 625.

## III. Analysis

### A. The Unemployment Compensation Act

■ TUCA grants certain benefits to individuals who become either totally or partially unemployed. TEX. LAB. CODE §§ 207.002–.003. Benefits are determined based on wages a claimant received as an employee. *Id.* Therefore, the key focus under TUCA is whether a claimant can establish that he or she was in an employment relationship with an employer. TUCA defines "employment" as

> a service . . . performed by an individual for wages or under an express or implied contract of hire, unless it is shown to the satisfaction of the commission that the individual's performance of the service has been and will continue to be free from control or direction under the contract and in fact.

*Id.* § 201.041. A presumption of employment arises upon a showing that an individual is paid for performing services. *See id.* This presumption is rebutted only if the alleged employer carries its burden of showing that the individual's service is "free from control or direction under the contract and in fact." *See id.*

The TWC has adopted a regulation setting out guiding principles to assist with the employment determination. 40 TEX. ADMIN. CODE § 821.5. The regulation incorporates the common law test: "a worker is an employee if the purchaser of that worker's service has the right to direct or control the worker, both as to the final results and

as to the details of when, where, and how the work is done." *Id.* Control does not have to "actually be exercised; rather, if the service recipient has the *right* to control, employment may be shown." *Id.* The regulation then sets out twenty factors as guidance for determining whether a worker qualifies as an employee for purposes of unemployment benefits. *Id.* Not all of the twenty factors will necessarily apply in every inquiry. *Id.* The weight assigned to a specific factor will vary depending on the facts of each case. *Id.*

### B. "Control"

HCAD argues that the TWC arbitrarily and unreasonably disregarded its own regulation and asserts that the TWC's position—that HCAD need not control the decisions themselves, but only the means by which decisions were issued—ignores the regulation's plain language. HCAD further argues that Board members are part of an independent decision-making body, and HCAD has no right or ability to control their decisions. Thus, at the outset, we must determine the meaning of "control" in the context of TUCA, and whether the TWC arbitrarily and unreasonably ignored its own regulation.

■ If an agency does not follow the clear, unambiguous language of its own regulation in making a decision, the agency's action is arbitrary and capricious and will be reversed. *Tex. Indus. Energy Consumers v. CenterPoint Energy Hous. Elec., LLC*, 324 S.W.3d 95, 104 (Tex. 2010). Under the TWC's regulation:

> a worker is an employee if the purchaser of that worker's service has the right to direct or control the worker, both as to the final results and as to the details of when, where, and how the work is done. Control need not actually be exercised; rather, if the service recipient has the

*right* to control, employment may be shown.

40 TEX. ADMIN. CODE § 821.5.

Both section 201.041 of the Labor Code and the TWC's regulation require that a worker's performance be controlled, or subject to control, in order for a worker to qualify as an employee. *See id.*; TEX. LAB. CODE § 201.041. While HCAD does not, and cannot, control the content or result of any decision the Board makes, controlling the outcome of a worker's decisions is not the test. *See* TEX. TAX CODE § 42.02 (providing that if an appraisal district disagrees with a decision by the appraisal review board, its recourse is to appeal the decision to the district court). Rather, the test the TWC adopted looks at twenty different factors to determine whether, on balance, the purchaser of the worker's service "has the right to direct or control the worker, both as to the final results and as to the details of when, where, and how the work is done." 40 TEX. ADMIN. CODE § 821.5.

Indeed, this Court has expressly recognized that control of the content of a worker's decision is not a necessary element in establishing employment status. In *Murk v. Scheele*, we determined whether a physician was an employee of a hospital for purposes of the Texas Tort Claims Act. 120 S.W.3d 865, 866 (Tex. 2003). Although the definition of "employee" in the Tort Claims Act does not track the language of TUCA exactly, the wording of the control element is very similar. Under the Tort Claims Act, " 'Employee' means a person, . . . who is in the paid service of a governmental unit, but does not include . . . a person who performs tasks the details of which the governmental unit does not have the *legal right to control.*" *See id.* (emphasis added) (quoting TEX. CIV. PRAC. & REM. CODE § 101.001(2)). After determining that the physician was in the paid service of the

governmental unit, we concluded that he was an employee despite the fact that his "exercise of independent professional judgment as a treating physician was outside [the governmental unit's] right of control." *Id.* at 867. In reaching our conclusion, we noted that:

> The operator of a motor vehicle, for example, must exercise independent judgment, but this does not mean that he or she cannot be considered an employee under the Act. If it did, a governmental unit could never be "liable for ... injury ... proximately caused by ... the negligence of an employee ... aris[ing] from the operation or use of a motor-driven vehicle."

*Id.* (alterations in original) (quoting TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A)).

Thus, Board members are not precluded from meeting the definition of "employment" under TUCA simply because they exercise independent judgment, or the content and result of their decisions are not under the direct control of HCAD.

## C. The Tax Code

HCAD argues that the Legislature clearly intended to separate appraisal review boards and their members from appraisal districts. It points to several provisions under the Tax Code to support its argument that a Board member cannot be an employee of HCAD and claims that the TWC disregarded these clear statutory prohibitions. HCAD further argues that the Tax Code prevails over the Labor Code because it is the more specific statute and directly addresses appraisal review board members rather than employees in general. Because the Tax Code does not define the term "employee," the common meaning applies. Thus, according to HCAD, the same standard for whether a worker qualifies as an employee applies under both the Labor Code and the Tax Code.

To support its argument, HCAD cites several Tax Code provisions. One is section 6.412(c): "A person is ineligible to serve on the appraisal review board if the person is a member of the board of directors, an officer, or employee of the appraisal district, an employee of the comptroller, or a member of the governing body, officer, or employee of a taxing unit." TEX. TAX CODE § 6.412(c); *see also* TEX. ATT'Y GEN. OP. No. JM-1060 (1989) ("Directors of the appraisal district and employees of the appraisal office are among the persons disqualified from service on the appraisal review board."). Another is section 6.413(a): "An individual is not eligible to be appointed to or to serve on the appraisal review board established for an appraisal district if the individual or a business entity in which the individual has a substantial interest is a party to a contract with the appraisal district or with a taxing unit that participates in the appraisal district." TEX. TAX CODE § 6.413(a). The Tax Code also prohibits an employee of an appraisal district from communicating "with a member of the appraisal review board established for the appraisal district with the intent to influence a decision by the member in the member's capacity as a member of the appraisal review board." *Id.* § 6.411(b).

We were faced with an analogous situation recently in *Colorado County v. Staff*, 510 S.W.3d 435 (Tex. 2017). In that case, we were required to construe the meaning of the phrase, "person making a complaint," as that phrased is used in the Texas Government Code. *Id.* at 452 (citing TEX. GOV'T CODE § 614.022(2)). The statute at issue dealt with procedural safeguards protecting peace officers from adverse employment actions that might be based on unsubstantiated complaints of misconduct. *Id.* at 454. One of the arguments we ad-

dressed was whether the term "complainant," which is defined in another statute as "a person claiming to be the victim of misconduct by a firefighter or police officer," should also limit the term's reach in section 614.022 to the victim of the misconduct. *Id.* at 451–52 (citing TEX. LOC. GOV'T CODE § 143.123(a)(1)). In conducting the analysis, we first noted the principle of statutory construction that requires us to apply the common meanings of a word used in a statute to the same word, or substantially the same word, when it is used in another statute, "unless there be something in the context or the nature of things to indicate that it intended a different meaning." *Id.* at 452. But we went on to reason that although the two words are similar, the special definition of "complainant" in section 143.123(a)(1) should not limit the definition of "person making the complaint" in section 614.022 because doing so would frustrate the Legislature's intent in enacting the later statute. *Id.* at 452–54. Thus, the definition of "employee" in the Tax Code should be construed similarly to the definition of "employment" in TUCA unless the Legislature intended the statutes to achieve distinctly different ends.

■ The Tax Code codifies a constitutional mandate to "appraise and assess property for purposes of taxation" and requires that "all property must be equally and uniformly taxed." *Atascosa Cty. v. Atascosa Cty. Appraisal Dist.*, 990 S.W.2d 255, 257 (Tex. 1999) (citing TEX. CONST. art. VIII, §§ 1(a), 11). The purpose of the Tax Code provisions HCAD cites is to prevent a conflict of interest by determining who may serve on an appraisal review board in order to maintain equal and uniform taxation. *See generally* TEX. TAX CODE §§ 6.411–.413. By contrast, the primary purpose of TUCA is to "provide compensation for workers who are unemployed through no fault of their own." *Collingsworth Gen. Hosp. v. Hunnicutt*, 988 S.W.2d 706, 709 (Tex. 1998). Another purpose is to prevent unemployment and stabilize employment "by rewarding the employer who provides stable employment." *Rowan Oil Co. v. Tex. Emp't Comm'n*, 152 Tex. 607, 263 S.W.2d 140, 143–44 (Tex. 1953). Therefore, as the TWC points out, these statutes serve two separate and distinct purposes.

■ Furthermore, the Tax Code neither defines nor uses the term "employment." The Tax Code simply governs who can serve on an appraisal review board, not what "employment" means for purposes of TUCA. On the other hand, TUCA explicitly provides a definition of "employment" that applies to unemployment benefit issues. *See* TEX. LAB. CODE § 201.041. HCAD argues that because the TWC adopted the common law test in its regulation, the meaning of "employee" is the same under the Tax Code and the Labor Code. *See* 40 TEX. ADMIN. CODE § 821.5. Under the common law, the determination of whether a person is an employee is according to "whether the employer has the right to control the progress, details, and methods of operations of the work." *Limestone Prods. Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002). Thus, an employee is one who "works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance." *Klumb v. Hous. Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 10 n.4 (Tex. 2015) (quoting *Employee*, BLACK'S LAW DICTIONARY (10th ed. 2014)). It is true that when a statute does not define a term, the common, ordinary meaning of the term applies unless a contrary meaning is apparent from the statute's language or the common meaning

would lead to absurd or nonsensical results. *See* Tex. Gov't Code § 311.011(a); *see also Staff*, 510 S.W.3d at 451–54. But the relevant question under TUCA is whether there is an employment relationship. Section 201.041 specifically defines the term "employment" for purposes of TUCA. Tex. Lab. Code § 201.041. Although the TWC adopted the common law test in its regulation, it gave further guidance—beyond the common law test—for the employment status determination by listing twenty factors to be considered when making such a determination.

Because the Tax Code lacks a definition of "employment" or "employee" and serves a different purpose than TUCA, the Tax Code's references to the term "employee" do not control TUCA's determination of employment status. As the TWC argues, it is entirely possible, when reading the statutes in accordance with their respective legislative purposes, that an employment relationship exists for purposes of TUCA without a worker qualifying as an employee for purposes of the Tax Code. *See, e.g., Staff*, 510 S.W.3d at 452.

 HCAD also argues that the Tax Code controls because it is the more specific provision and speaks specifically to appraisal review board members, whereas the Labor Code addresses employees generally. If two statutes are in conflict, "we will construe the different provisions in a way that harmonizes rather than conflicts." *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 716 (Tex. 2015). If there is an irreconcilable conflict between a general provision and a specific provision, the specific provision will ordinarily prevail unless the general provision is the later enactment and the manifest intent is that the general provision prevail. *Id.* (citing Tex. Gov't Code § 311.026(b)); *Daughters of Charity Health Servs. v. Linnstaedter*, 226 S.W.3d 409, 411 (Tex. 2007) (holding that

although the Property Code grants hospitals a lien to secure their fees, the more specific provision in the Labor Code restricts hospital liens involving workers compensation patients to amounts due under the worker's compensation system). In this case, the more specific, and thus controlling, provision is found in section 201.041 of the Labor Code.

We conclude that the Tax Code provisions HCAD relies on do not control the definition of "employment" or "employee" for purposes of TUCA. As a result, the Tax Code does not prohibit or prevent a Board member from being an employee of HCAD for TUCA purposes.

### D. Evidentiary Support for the TWC's Determination

 The claimants presented undisputed evidence to the TWC that HCAD paid them for their services. *See* Tex. Tax Code § 6.42(c). Therefore, the presumption of employment arose, and it became HCAD's burden to show "to the satisfaction of the commission that the individual's performance of the service has been and will continue to be free from control or direction under the contract and in fact." Tex. Lab. Code § 201.041. Again, substantial evidence review requires "only more than a mere scintilla" of evidence to validate an agency's decision. *See City of Dallas v. Stewart*, 361 S.W.3d 562, 566 (Tex. 2012). After reviewing the evidence, we conclude that although no evidence supports the TWC's finding of employment under some of the factors and some factors do not apply under the circumstances, there is substantial evidence—that is, more than a scintilla—to support the TWC's determination that HCAD did not overcome the presumption of employment under several parts of the twenty-factor test. *See* Tex. Lab. Code § 201.041; 40 Tex. Admin. Code § 821.5. We do not address factor 11 (Oral

or Written Reports) because the parties do not dispute that there is no evidence under that factor to support the TWC's finding of employment. We also do not address factors 15 (Significant Investment) and 16 (Realize Profit or Loss) because they are inapplicable to this case. But, as noted below, evidence falling within many of the remaining factors supports the TWC's finding.

**1. INSTRUCTIONS:** An Employee receives instructions about when, where, and how the work is to be performed. An Independent Contractor does the job his or her own way with few, if any, instructions as to the details or methods of the work.

HCAD argues that the Board sets the time, date, and place for hearings and meetings under the Tax Code. *See* Tex. Tax Code §§ 6.42(b), 41.45(a), 41.66(k), 41.71. The appraisal district board·of directors selects, by resolution, the chairman and secretary of the appraisal review board. *Id.* § 6.42(a). The Board "may meet at any time at the call of the chairman or as provided by rule of the board." *Id.* § 6.42(b). The Board schedules the protest hearings. *Id.* §§ 41.05, .45(a). The Board "shall establish by rule the procedures for hearings it conducts." *Id.* § 41.66(a). However, the claimants presented evidence that they were directed which disputes to hear, where to hear them, and the date and time such disputes were to be heard. The claimants also presented evidence that they were instructed as to the procedures they were to follow in conducting the hearings and issuing decisions, such as what evidence should be considered, how many minutes each side should be given to present their case, how long each hearing should last, and when the decision should be issued.

It is not clear from the·evidence who directed the Board members regarding these instructions. But even assuming the chair gave these instructions, the fact that HCAD designated the chair does not constitute evidence that HCAD has the right to control, or controls, the chair's decisions regarding when the Board meets or how it conducts hearings. Under this factor, there is not evidence to support the TWC's finding of employment.

**2. TRAINING:** Employees are often trained by a more experienced employee or are required to attend meetings or take training courses. An Independent Contractor uses his or her own methods and thus need not receive training from the purchaser of those services.

The Board members are required by statute to complete training and may not participate in a hearing conducted by the Board unless such training is completed. *See* Tex. Tax Code § 5.041(b), (e-2). The comptroller "approve[s] curricula and provide[s] materials for use in training and educating members of an appraisal review board." *Id.* § 5.041(a)(1). The training course "may not be provided by an appraisal district." *Id.* § 5.041(c). Further, an employee of the appraisal district "may not communicate with a member of an appraisal review board·about a course provided under this section." *Id.* § 5.041(g).

However, the claimants presented evidence that the training sessions were conducted in HCAD's office building, and HCAD paid for the training. HCAD argues that an employee must receive training from the purchaser of his or her services in order for it to qualify as training under this requirement. But as the TWC points out, there is no such requirement in its regulation or the statute. Rather, the relevant inquiry is whether the person was "*required* to attend meetings or take training courses." 40 Tex. Admin. Code § 821.5 (emphasis added). The claimants were not allowed to use their own methods in the

performance of their duties as members of the Board. The fact that this training was statutorily required or not provided by HCAD does not negate the fact that training was required in order for the claimants to perform their services. *See* TEX. TAX CODE § 5.041(b). There is evidence under this factor to support the TWC's finding of employment.

**3. INTEGRATION:** Services of an Employee are usually merged into the firm's overall operation; the firm's success depends on those Employee services. An Independent Contractor's services are usually separate from the client's business and are not integrated or merged into it.

HCAD is responsible for appraising property in its district for ad valorem tax purposes. TEX. TAX CODE § 6.01(b). The Board is charged with determining protests and challenges to HCAD's initial valuations, correcting clerical errors in the appraisal records and appraisal rolls, and determining whether an exemption or a partial exemption is improperly granted. *Id.* § 41.01(a). The Board members' service is therefore merged into the overall success of HCAD because the accuracy of the appraisal records and appraisal rolls, as well as the public confidence in HCAD's valuations, would otherwise suffer. Under this factor, there is evidence to support the TWC's finding of employment.

**4. SERVICES RENDERED PERSONALLY:** An Employee's services must be rendered personally; Employees do not hire their own substitutes or delegate work to them. A true Independent Contractor is able to assign another to do the job in his or her place and need not perform services personally.

The parties do not dispute that Board members must personally render their services and have no discretion to outsource their work. There is evidence under this

factor to support the TWC's finding of employment.

**5. HIRING, SUPERVISING & PAYING HELPERS:** An Employee may act as a foreman for the employer but, if so, helpers are paid with the employer's funds. Independent Contractors select, hire, pay and supervise any helpers used and are responsible for the results of the helpers' labor.

The Board has no staff of its own. HCAD provides and pays for the Board's clerical and support staff. HCAD argues that the personnel providing clerical assistance are prohibited by statute from controlling the details of a Board member's work. *See* TEX. TAX CODE § 6.411(b), (d). However, simply because helpers may not control the details of a Board member's work does not change the fact that HCAD hires, supervises, and pays for the Board members' clerical and support staff. Under this factor, there is evidence to support the TWC's finding of employment.

**6. CONTINUING RELATIONSHIP:** An Employee often continues to work for the same employer month after month or year after year. An Independent Contractor is usually hired to do one job of limited or indefinite duration and has no expectation of continuing work.

The Board members serve two-year terms and are prohibited from serving more than three consecutive terms. *See* TEX. TAX CODE §§ 6.41(e), 6.412(e). Thus, for at least two years, it can be argued that there is a continuing relationship between the Board members and HCAD. However, rather than continuing to serve year after year, the Board members serve for a limited duration and have no expectation of continuing work after their two-year term expires. The evidence under this factor does not support the TWC's finding of employment.

**7. SET HOURS OF WORK:** An Employee may work "on call" or during hours and days as set by the employer. A true Independent Contractor is the master of his or her own time and works the days and hours he or she chooses.

Upon the filing of a protest, the Board "shall schedule a hearing on the challenge." TEX. TAX CODE § 41.05(a); *see also id.* § 41.45. The Tax Code requires that the Board "shall provide for hearings on protests in the evening or on a Saturday or Sunday." *Id.* § 41.71. The Board "may meet at any time at the call of the chairman or as provided by rule of the board." *Id.* § 6.42(b). The former Board members did not have a set schedule but worked as needed, and they were directed as to the date and time they were to hear disputes. It is not clear from the evidence who directed the Board members' schedule. But even assuming the chair gave these instructions, the fact that HCAD designated the chair does not constitute evidence that HCAD has the right to control, or controls, the chair's decisions regarding the Board members' schedules. The evidence under this factor does not support the TWC's finding of employment.

**8. FULL TIME REQUIRED:** An Employee ordinarily devotes full-time service to the employer, or the employer may have a priority on the Employee's time. A true Independent Contractor cannot be required to devote full-time service to one firm exclusively.

There is no requirement that Board members work full time. Rather, they are required to be present at called meetings in accordance with an attendance policy adopted by HCAD. *See* TEX. TAX CODE § 6.41(f)(2) (authorizing removal for "good cause relating to the attendance of members at called meetings of the board as established by written policy adopted by a majority of the appraisal district board of directors"). As the TWC correctly argues, this strict attendance policy requires a Board member to place a high priority on his or her Board duties. Under this factor, there is evidence, albeit slight, to support the TWC's finding of employment.

**9. LOCATION WHERE SERVICES PERFORMED:** Employment is indicated if the employer has the right to mandate where services are performed. Independent Contractors ordinarily work where they choose. The workplace may be away from the client's premises.

HCAD argues that it had no right to mandate where Board members determined protests. *See* TEX. COMPTROLLER OF PUB. ACCOUNTS, APPRAISAL REVIEW BOARD MANUAL 15 (Jan. 2017) ("Generally, ARB hearings must be conducted at the appraisal office because of budgetary and administration issues. The ARB may consider conducting some hearings at other locations for the convenience of property owners."). Furthermore, HCAD urges, the Tax Code provides that the Board set its own schedule and send notices of the time and location of the hearings. TEX. TAX CODE §§ 41.06, .46. Although the hearings were held in rooms located in the building where the HCAD and appraisal review board offices are located, there is no evidence that HCAD had the right to mandate where the Board members performed their services. There is not evidence under this factor to support the TWC's finding of employment.

**10. ORDER OR SEQUENCE SET:** An Employee performs services in the order or sequence set by the employer. This shows control by the employer. A true Independent Contractor is concerned only with the finished product and sets his or her own order or sequence of work.

The former Board members presented evidence that they were directed as to

which disputes to hear, where to hear them, and the date and time they were to be heard. The former Board members were also directed as to the procedures they were to follow, including what evidence should be considered, how many minutes each side should be given to present their case, how long each hearing should last, and when the decision should be issued. However, HCAD argues that the Board adopts its own hearing procedures that conform with requirements set by the comptroller. *See* Tex. Tax Code § 5.103(a) ("The comptroller shall prepare model hearing procedures for appraisal review boards."); *see also id.* § 41.66(a) ("The appraisal review board shall establish by rule the procedures for hearings it conducts...."). As a result of the Board's authority to establish its own rules for the conduct of its business, the evidence under this factor does not support the TWC's finding of employment.

**12. PAYMENT BY THE HOUR, WEEK OR MONTH:** An Employee is typically paid by the employer in regular amounts at stated intervals, such as by the hour or week. An Independent Contractor is normally paid by the job, either a negotiated flat rate or upon submission of a bid.

Members of an appraisal review board "are entitled to per diem set by the appraisal district budget for each day the board meets and to reimbursement for actual and necessary expenses incurred in the performance of board functions as provided by the district budget." Tex. Tax Code § 6.42(c). The claimants presented evidence that HCAD paid them on an hourly basis, and they earned $20.25 per hour. If a Board member worked eight hours or more on a given day, HCAD would pay the Board member $162 for that day. Contrary to HCAD's argument, there is no requirement under the TWC's regulation that an employer must have discre-

tion in determining whether to pay employees or that the payment be conditioned on an employee's performance or attendance. *See Spears v. Sheppard,* 136 Tex. 277, 150 S.W.2d 769, 770 (Tex. 1941). Rather, the focus of the inquiry is whether a worker is paid by the employer in regular amounts. *See* 40 Tex. Admin. Code § 821.5. Because that is occurring here, there is evidence under this factor to support the TWC's finding of employment.

**13. PAYMENT OF BUSINESS & TRAVEL EXPENSES:** An Employee's business and travel expenses are either paid directly or reimbursed by the employer. Independent Contractors normally pay all of their own business and travel expenses without reimbursement.

As stated above, members of an appraisal review board are entitled "to reimbursement for actual and necessary expenses incurred in the performance of board functions as provided by the district budget." Tex. Tax Code § 6.42(c). Again, contrary to HCAD's argument, nothing requires that reimbursement of these expenses must be within the employer's discretion. The Board members presented evidence that HCAD reimbursed their business and travel expenses. Under this factor, there is evidence to support the TWC's finding of employment.

**14. FURNISHING TOOLS & EQUIPMENT:** Employees are furnished all necessary tools, materials and equipment by their employer. An Independent Contractor ordinarily provides all of the tools and equipment necessary to complete the job.

HCAD acknowledges that it provides clerical support and equipment for use by Board members. HCAD argues that the mere provision of equipment is not due to the existence of an employment relationship but rather is the result of an adminis-

trative necessity because the Legislature provided that HCAD's budget encompassed the Board's budget. Nevertheless, the TWC established in its regulation that one of the many factors in determining employment status is whether an employer furnishes employees with "all necessary tools, materials and equipment." 40 TEX. ADMIN. CODE § 821.5. And in this case, HCAD furnished the Board with the necessary tools, materials, and equipment. There is evidence under this factor to support the TWC's finding of employment.

**17. WORKING FOR MORE THAN ONE FIRM AT A TIME:** An Employee ordinarily works for one employer at a time and may be prohibited from joining a competitor. An Independent Contractor often works for more than one client or firm at the same time and is not subject to a non-competition rule.

To be eligible to serve on an appraisal review board, "an individual must be a resident of the district and must have resided in the district for at least two years." TEX. TAX CODE § 6.41(c). Part of the relevant inquiry is whether an individual is prohibited from "joining a competitor," and in this case, a competitor would be another appraisal review board. 40 TEX. ADMIN. CODE § 821.5. A Board member cannot serve on two appraisal review boards at the same time. However, the other part of the inquiry is whether an individual works "for one employer at a time." *Id.* HCAD asserts that Board members are not restricted from being employed outside their service on the Board. Although a Board member is statutorily prohibited from serving on two appraisal review boards at the same time, a Board member may work for another employer while serving on the Board. This factor does not weigh in favor of or against employment.

**18. MAKING SERVICE AVAILABLE TO THE PUBLIC:** An Employee does not make his or her services available to the public except through the employer's company. An Independent Contractor may advertise, carry business cards, hang out a shingle or hold a separate business license.

The Board members decide taxpayer protests, determine taxing unit challenges, and correct the appraisal records and appraisal rolls. TEX. TAX CODE § 41.01(a). Contrary to other types of services that allow an employee the opportunity to make his or her services available to the public outside of the employer's company, Board members are unable to do so. The Board members must decide any disputes regarding HCAD's property valuations solely within their role as members of the Board. There is evidence under this factor to support the TWC's finding of employment.

**19. RIGHT TO DISCHARGE WITHOUT LIABILITY:** An Employee can be discharged at any time without liability on the employer's part. If the work meets the contract terms, an Independent Contractor cannot be fired without liability for breach of contract.

The relevant inquiry is whether an employee may be discharged "at any time without liability on the employer's part." 40 TEX. ADMIN. CODE § 821.5. The Tax Code provides the grounds for removal of a Board member. TEX. TAX CODE § 6.41(f). A member "may be removed from the board by a majority vote of the appraisal district board of directors, or by the local administrative district judge or the judge's designee, as applicable, that appointed the member." *Id.* Because a Board member can be discharged only when one of the statutory grounds for removal are met, there is not evidence under this factor to support the TWC's finding of employment.

**20. RIGHT TO QUIT WITHOUT LIABILITY:** An Employee may quit work at any time without liability on the Employee's part. An Independent Contractor is legally responsible for job completion and, on quitting, becomes liable for breach of contract.

All parties agree that a Board member may quit anytime without any liability. HCAD attempts to argue that this factor is irrelevant because the nature of public service contains "an element of volunteerism in accepting a post as a public official." But simply because a worker is in public service does not change the fact that the worker may quit without liability. Following that metric, essentially every job could be deemed "voluntary" by virtue of a person's seeking work from an employer. Under this factor, there is evidence to support the TWC's finding of employment.

Considering all the factors, we conclude that there is more than a scintilla of evidence to support the TWC's determination that an employment relationship existed between HCAD and the claimants. *See Dotson v. State Bd. of Med. Exam'rs*, 612 S.W.2d 921, 922 (Tex. 1981). Thus, there is substantial evidence to support the TWC's determination that they were entitled to unemployment compensation. *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986).

### E. Judicial Exemption

■ HCAD also argues that the claimants fall under an exemption in TUCA for members of the judiciary. TUCA broadly defines "employment" but also contains several provisions that narrow that definition with specific statutory exemptions. One of these exemption provisions, section 201.063(a)(1), provides:

(a) In this subtitle, "employment" does not include:

(1) service in the employ of a political subdivision or of an instrumentality of a political subdivision that is wholly owned by one or more political subdivisions:

(A) as an elected official;

(B) as a member of a legislative body;

(C) as a member of the judiciary;

(D) as a temporary employee in case of fire, storm, snow, earthquake, flood, or similar emergency;

(E) in a position that is designated under law as a major nontenured policy-making or advisory position or a policy-making or advisory position that ordinarily does not require more than eight hours of service each week; or

(F) as an election official or worker if the remuneration received by the individual during the calendar year is less than $1,000.

TEX. LAB. CODE § 201.063(a)(1). HCAD argues that Board members fall under the definition of "members of the judiciary" in subsection (C) because they serve a judicial function. And, according to HCAD, the same public policies that support treating Board members as members of the judiciary in other instances support categorizing them as members of the judiciary for employment purposes here.

■ As with any case involving the interpretation of a statute, we begin with the language of the statute. *See City of DeSoto v. White*, 288 S.W.3d 389, 395 (Tex. 2009). We use definitions prescribed by the Legislature and take into account any technical or particular meaning the words have acquired. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). In the absence of a statutory definition, we must "determine a term's plain or ordinary meaning," unless a contrary meaning is apparent from the statute's language. *Wal-Mart Stores, Inc. v. Forte*, 497 S.W.3d 460,

471 (Tex. 2016). To determine the ordinary meaning of statutory terms, "we typically look first to their dictionary definitions and then consider the term's usage in other statutes, court decisions, and similar authorities." *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017).

Turning to the language at issue, the Legislature did not provide a definition for the term "judiciary" as it is used in section 201.063. *See* TEX. LAB. CODE § 201.063. *Black's Law Dictionary* defines "judiciary" as "[t]he branch of government responsible for interpreting the laws and administering justice." *Judiciary*, BLACK'S LAW DICTIONARY (10th ed. 2014). It is a "system of courts" and a "body of judges." *Id.* Thus, the focus of this definition is that the judiciary is the third branch of government. As the court of appeals pointed out, the structure of the statute in question supports this view. The first three exemptions in section 201.063 refer to a person's position in our trifurcated system of government, while the last three are based on a person's specific conduct. *See* TEX. LAB. CODE § 201.063(a)(1). We hold that the plain meaning of section 201.063's member of the judiciary exemption only applies to members of the judiciary, that is, the judicial branch of government.

But this does not end our inquiry because HCAD argues that the Board members, through the Legislature's delegation of important judicial functions, have been transformed into members of the judiciary for purposes of the exemption. HCAD points out that appraisal review boards have the power to make determinations of fact and conclusions of law, a role typically reserved for the judiciary. TEX. TAX CODE § 41.01; *see Holmes v. Morales*, 924 S.W.2d 920, 923 (Tex. 1996); *see also Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006). Further, HCAD as-

serts that unlike administrative law judges, the Board members serve as independent judges whose recommendations are not subject to vacation or modification by the relevant agency; the Board's decisions are binding on the TWC and may only be appealed within the judicial branch. TEX. TAX CODE § 42.21; *see* TEX. GOV'T CODE § 2001.058(e).

■ At the outset, we note that the Legislature illustrated its ability to formulate exemptions based on conduct in the very same statute at issue by creating three exemptions that focus on specific tasks. *See* TEX. LAB. CODE § 201.063(a)(1)(D)–(F). And we will not give an undefined statutory term a meaning that is out of harmony or inconsistent with other provisions in the statute. *In re Hall*, 286 S.W.3d 925, 928–29 (Tex. 2009). Thus, if the Legislature intended those performing judicial functions to be included in the list of exemptions, we must presume it would have said so, either by broadening the definition of the term judiciary in subsection (C) or by creating another conduct-based exemption. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) (noting that we presume the Legislature "chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen").

■ But performing judicial functions—what the court of appeals aptly described as quasi-judicial activity—does not make the Board members a part of the judiciary for several reasons. First, there is a distinction between quasi-judicial bodies and the judiciary. In *Barshop v. Medina County Underground Water Conservation District*, we addressed numerous constitutional and other challenges to the then newly minted Edwards Aquifer Act. 925 S.W.2d 618 (Tex. 1996). Specifically, the petitioners claimed that, through the

statutory water permitting process, the Legislature had improperly delegated a strictly judicial function—determining property rights—as outlined in the Texas Constitution. *Id.* at 635 (citing TEX. CONST. art. II, § 1). In denying the constitutional challenge, we held that the separation of powers provision did "not bar administrative agencies of the executive branch of government from working in tandem with the judicial branch to administer justice." *Id.* "Administrative fact findings are a necessary aspect of administrative discretion and are not an exclusively judicial function." *Id.* (citing *Corzelius v. Harrell,* 143 Tex. 509, 186 S.W.2d 961, 967–68 (Tex. 1945)). Further, we noted a previous decision that "acknowledged that '[a]n administrative agency is not a "court" and its contested case proceedings are not lawsuits.... Agency adjudications do not reflect an exercise of the judicial power assigned to the "courts" of the State ...; they are simply executive measures taken in the administration of statutory provisions.' " *Id.* (quoting *State v. Flag-Redfern Oil Co.,* 852 S.W.2d 480, 485 n.7 (Tex. 1993)). The principles that led us to that decision are no less implicated in this case. Even though the Board conducts hearings, determines findings of fact, and issues conclusions of law, at bottom, these are executive measures designed to efficiently and effectively administer the Tax Code without placing the entire burden on the court system. *See id.* This delegation of authority does not place the Board members in the judicial branch of our government.

Further, we noted in *Barshop* that our conclusion was "buttressed by the fact that the Authority's determinations will be subject to judicial review." *Id.* at 635–36. So it is here with the Board's decisions. *See* TEX. TAX CODE §§ 42.21, .24. In *Barshop,* we set a high bar with respect to the quantum and quality of judicial functions the Legislature could delegate before encroaching on the judiciary's exclusive role. *Barshop,* 925 S.W.2d at 635 (holding that administrative decisions that amount to fact finding determinations are not adjudications and, thus, not judicial determinations). The powers that have been statutorily delegated to the Board do not surmount that bar. Thus, the Board members are not members of the judiciary; they perform traditionally judicial functions which have long been recognized as an extension of executive authority.

Second, we also are unconvinced that the unique characteristics of appraisal review boards require a different outcome in this case. HCAD alludes to the fact that the Board is given additional powers not typically vested in administrative bodies and claims this warrants the Board's inclusion in the members of the judiciary exemption in the statute. We disagree. While it is true that the Board's decisions are not subject to internal agency modification or vacatur—a power that other agencies often possess—this increased autonomy does not make the Board a part of the judiciary. *See, e.g.,* TEX. GOV'T CODE § 2001.058(e). Administrative agencies are statutory creatures of the Legislature with no inherent authority of their own. *Tex. Nat. Res. Conservation Comm'n v. Lakeshore Util. Co.,* 164 S.W.3d 368, 377 (Tex. 2005). Any power an agency or an agency review board has is directly conferred by the Legislature. *Id.* And when it comes to administrative bodies, we afford the Legislature a great deal of leeway to determine just how to achieve its objectives. *See Igal v. Brightstar Info. Tech. Grp., Inc.,* 250 S.W.3d 78, 92 (Tex. 2008). In this instance, the Texas Constitution mandated the Legislature to create "a single board of equalization for each appraisal entity." TEX. CONST. art. VIII, § 18. To achieve these ends, the Legislature cre-

ated a somewhat unique system by withholding an appraisal district's power to modify its property valuations and placed such power in the appraisal review boards. *See* Tex. Tax Code § 6.01; *see also id.* § 41.01. But we cannot agree that this structure was designed to instill Board members with judiciary status, much less for employment purposes. Rather, we think the unique structure is a recognition of the serious implications appraisal districts' tax determinations have on taxpayers. *See* Tex. Const. art. VIII, § 11 (all property "shall be assessed at its *fair value*" (emphasis added)); *see also id.* § 1(a) ("Taxation shall be *equal* and *uniform.*" (emphasis added)). In light of these concerns, the Legislature established appraisal review boards to "ensur[e] that property is properly appraised." *Atascosa Cty. v. Atascosa Cty. Appraisal Dist.*, 990 S.W.2d 255, 257 (Tex. 1999) (citing Tex. Tax Code §§ 6.41, 41.01). But the final say still rests with the judiciary and only after the administrative remedies—a final determination by the Board—are exhausted. Tex. Tax Code § 42.21(h).

HCAD argues also that public policy weighs in favor of finding that Board members are members of the judiciary for purposes of TUCA. HCAD points to various statutes designed to provide the Board with neutrality. Namely, one statute prevents HCAD employees from serving on the Board, another prevents an individual from serving on the Board if he or she is related to someone involved in the business of appraising property, another prevents communications between HCAD and the Board, and still another prevents the Board members from hearing disputes concerning individuals or business entities in which the member has a substantial interest. *Id.* §§ 6.411(a), 6.412(a), (c), 6.413(a), 41.66(f). This Court, and others, have extended judicial immunity and the rule preventing judges from testifying in

trials in which they sit to quasi-judicial administrative agents. *See Butz v. Economou*, 438 U.S. 478, 511–14, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (extending judicial immunity to cover judicial acts of federal hearing examiners and administrative law judges); *Bradley v. State ex rel. White*, 990 S.W.2d 245, 248–50 (Tex. 1999) (extending the rule preventing a presiding judge from testifying in that trial as a witness to a presiding alderman); *Sledd v. Garrett*, 123 S.W.3d 592, 594 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (applying *Butz* to give quasi-judicial officers immunity).

In *Bradley v. State ex rel. White*, we extended Texas Rule of Evidence 605—preventing a judge from testifying in a trial in which he sat—to an alderman who sought to testify against a mayor in removal proceedings. 990 S.W.2d at 249–50. This was warranted because the alderman's "testimony created the appearance of bias that Rule 605 seeks to prevent." *Id.* at 249. In *Sledd v. Garrett*, the court of appeals applied *Butz v. Economou*, and extended judicial immunity to quasi-judicial officers because doing so "furthers the public interest in the administration of justice by allowing judicial officers to be free to act on their own convictions, without fear of personal liability." 123 S.W.3d at 594.

HCAD relies on the statutes and these cases to support its view that extending the judicial exemption to these claimants furthers the Legislature's desire to ensure the Board's independence and the appearance of impartiality. We disagree. The employment benefits at issue in this case concern only the claimants in their roles as employees. In contrast, each of the cases in which courts have extended judicial protections to quasi-judicial officers concerned those officers' actions in their decision-making capacity. For example, in *Sledd*, the court of appeals reasoned that "[t]o determine whether the Panel Members are

entitled to judicial immunity, we examine the functions they perform to see if these functions are comparable to those of judges." *Id.* at 594 (citing *Butz*, 438 U.S. at 512–13, 98 S.Ct. 2894). Employment benefits do not concern judicial functions. Although it is clear that the Legislature was concerned with the independence and neutrality of appraisal review boards, those considerations do not warrant an extension of the members of the judiciary exemption in this case.

Therefore, we agree with the court of appeals' determination that Board members do not fall within TUCA's exemption for members of the judiciary.

## IV. Conclusion

We affirm the judgment of the court of appeals.

Justice Guzman did not participate in the decision.