In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00375-CV
_____

GEORGE EDWARD GARCIA, Appellant

V.

TEXAS WORKFORCE COMMISSION AND TOSHIBA INTERNATIONAL
CORPORATION, Appellees

_____

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 17-10-12655-CV
_____

MEMORANDUM OPINION

After finding that George Edward Garcia resigned from his job with Toshiba

International Corporation for personal reasons unrelated to his job, the Texas

Workforce Commission (TWC) denied Garcia's claim for unemployment benefits.

Garcia sued the TWC and Toshiba, invoking his right to the judicial review of that

ruling. After reviewing the evidence the parties asked the trial court to consider in

1

the appeal, the trial court denied the appeal and granted TWC's and Toshiba's joint motion for summary judgment. We affirm.

Background

Garcia worked as a production technician at a Toshiba manufacturing facility from March 2013 until he resigned in April 2017. In March 2017, before resigning, Garcia sent Toshiba an email in which he advised Cheryl Johnson, Toshiba's human resources manager, that he was "having [a] hard time with Toshiba[']s extended work hours[,] . . . with continued body aches and pains[,]" and wanted to spend more time at home to deal with several family issues.[1] Garcia asked that Johnson meet with him to discuss "what options are available-something fair and accommodating for this labor issue."

Johnson met with Garcia several weeks later. According to Johnson, Garcia told her "he was dissatisfied with his work environment. He shared that he no longer liked the job and felt it was not a fit due to the lack of scheduling flexibility, the increased work hours, and the daily work tasks." Johnson also stated that Garcia told her he needed to spend more time at home to deal with issues that involved his family. Two weeks after the meeting, Garcia sent a text message to his immediate

---

[1] From December 2016 to April 2017, Toshiba required Garcia to work fifty hours per week.

2

supervisor quitting the job "effective immediately–for the reasons listed in my HR email (and then some)."

Shortly after resigning from Toshiba, Garcia filed a claim for unemployment benefits with the TWC. In his claim, Garcia stated he quit working for Toshiba because he "couldn't keep up with physical labor and extended work day (10 hrs) and mandatory work week (50-60 hr)." Before the TWC finally decided Garcia's claim, Garcia added that he resigned because Toshiba was storing toxic chemicals near the station where he worked.

After several administrative hearings, the TWC issued a final administrative decision. In it, the TWC stated that Garcia resigned for personal reasons unrelated to his work and had failed to provide sufficient evidence to show that Toshiba's "practices were unsafe." The TWC denied Garcia's claim for unemployment benefits.

In October 2017, Garcia sought judicial review of the TWC's decision denying his claim. Nine months later, Toshiba and the TWC moved for summary judgment, arguing that there were no genuine issues of material fact about whether the TWC's decision should be affirmed. Toshiba and the TWC supported their motion with evidence, affidavits from Johnson, Shane Daniels, Toshiba's Senior

3

Environmental Health and Safety Manager, and a certified copy of the TWC's administrative record.

In her affidavit, Johnson described the contents of Garcia's March 2017 email. Johnson also explained that when she met with Garcia in April, Garcia expressed the same concerns he raised in his March email about his schedule and the number of hours Toshiba was requiring him to work. That said, Johnson stated, "Garcia never reported any concerns of workplace safety or exposure to hazardous chemicals to me during or after the April 10, 2017 meeting." Johnson swore that she told Garcia about an open position in another location that would not have required him to work extra hours, but Garcia "declined the opportunity and stated that he did not want to work in manufacturing anymore. He was seeking an opportunity in real estate." About two weeks after the meeting, Johnson learned from Garcia's supervisor that Garcia had "voluntarily resigned from his position by sending [the supervisor] a text message indicating his reasons for quitting were contained in his March 9, 2017 email."

In his affidavit, Toshiba's safety manager, Daniels, explained that in late May 2017, an anonymous caller complained about "the levels of Styrene and Trigonox at the facility [where Garcia worked]." At Toshiba's request, an independent industrial hygienist conducted tests at Toshiba's facility and found styrene present at levels

"well below OSHA's permissible exposure limit." Daniels further stated that there are not chemicals in Trigonox that have OSHA exposure limits. Summing it up, Daniels stated the "facility was safe at the time of Mr. Garcia's employment and remains safe today."

In the certified copy of the administrative record, the TWC's final decision reflects that it found Garcia did not have good cause to leave his job. Turning to Garcia's safety complaints, the TWC found that Garcia "did not provide substantial evidence that the employer's practices were unsafe." Based on the evidence, the TWC concluded that "[Garcia's] separation was voluntary without good cause connected with the work[.]"

In response to the joint motion for summary judgment, Garcia provided the trial court a photograph, which he claims depicts the area where he worked. He argues the picture shows a large fan above a cardboard container that blows fumes towards the area where he worked. Garcia's remaining evidence, all of which was in the administrative record, fails to show that Garcia was ever exposed to hazardous levels of chemicals when he worked for Toshiba. Garcia did not file his own affidavit to support his response.

In August 2018, the trial court granted the joint motion for summary judgment and affirmed the decision of the TWC. After that, Garcia filed a timely notice of

5

appeal to challenge the trial court's ruling on the defendants' joint motion for summary judgment. Garcia raises five issues in his brief. Liberally construed, Garcia's brief argues that the trial court erred (1) by refusing to honor his request for a trial before a jury, (2) by conducting the summary-judgment hearing when TWC's lead counsel was not present, (3) by failing to grant the request he made asking the judge to recuse, (4) by failing to provide him with written findings to fully explain the trial court's ruling, and (5) in granting the defendants' joint motion for summary judgment.

Analysis

Jury Demand

For convenience, we will address Garcia's argument that the trial court should not have resolved the case in a summary-judgment proceeding before addressing his other issues. While Garcia argues the evidence shows he was entitled to a trial before a jury, judicial review of decisions from the TWC, an administrative agency, is by trial de novo based on whether substantial evidence supports the ruling the TWC made.[2] And "whether there is substantial evidence to support an administrative decision is a question of law."[3] Since courts resolve issues of law without the benefit

---

[2] Tex. Lab. Code Ann. § 212.202(a) ("Judicial review under this subchapter is by trial de novo based on the substantial evidence rule.").
[3] *Tex. Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006).

of juries, the trial court did not abuse its discretion by resolving Garcia's claim alleging the TWC's ruling should be overturned without allowing a jury to try Garcia's unemployment compensation claim.[4]

Because Garcia's issue lacks merit, it is overruled.

Due Process

Next, Garcia complains the trial court violated his right to due process when Jeffrey Hooks, the lead attorney for the TWC, filed a vacation letter and then asked the trial court to set the case for a hearing on a day he told the trial court in his letter he planned to be on vacation.[5] The record shows that in July 2018, Hooks asked the trial court to conduct a hearing on the defendants' joint motion for summary judgment on August 16. A month before asking the trial court to hear the motion on August 16, Hooks sent the court a vacation letter asking the court not to conduct proceedings during weeks that included August 16.

The trial court notified the parties that it would hear the case on August 16. The record does not show that Garcia ever objected to the August 16 hearing. The

---

[4] *See Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994) ("A question which calls for a finding beyond the province of the jury, such as a question of law, may be deemed immaterial.").

[5] Garcia failed to file a reporter's record of the summary-judgment hearing in the record he created in his appeal. *See* Tex. R. App. P. 34.6(b).

docket sheet in the case shows Hooks and Garcia attended the summary-judgment hearing on August 16.[6]

Simply put, the record before us shows that Garcia had a timely and meaningful opportunity to present his arguments opposing the motion for summary judgment. Because his issue lacks merit, it is overruled.

Motion to Recuse

In another section of his brief, Garcia argues that the trial court erred in denying his motion to recuse. In his motion to recuse, which Garcia failed to verify, Garcia alleged the judge presiding over his case should recuse from the case because the judge and an attorney representing one of the defendants graduated from the same school.[7] In his motion, Garcia alleged the judge should have recused "to avoid the detrimental effect" created by the fact the judge and one of the lawyers were graduates of the same school.

---

[6] Rule 166a, the Rule of Civil Procedure that governs motions for summary judgment, does not require trial courts to allow the parties to personally appear in court and argue for or against a motion for summary judgment. Tex. R. Civ. P. 166a. While oral hearings may help a trial court resolve motions for summary judgment, "an oral hearing [on a motion for summary judgment] is not mandatory." *Martin v. Martin, Martin & Richards*, *Inc.*, 989 S.W.2d 357, 359 (Tex. 1998).

[7] Tex. R. Civ. P. 18a(a)(1) (requiring motion to recuse to be verified).

Rule 18a provides that a motion to recuse must state a ground that, if proven, could justify a ruling recusing or disqualifying the judge.[8] While Garcia complained in his motion that the judge and an attorney representing one of the defendants graduated from the same school, that claim—even were we to assume it to be true—does not provide a sufficient basis to raise a question about the impartiality of the judge.[9] Stated another way, nothing about the fact that the judge and one of the lawyers in the case graduated from the same school supports an inference that for that reason, the judge's impartiality could reasonably be questioned.[10] And because Garcia failed to file a verified motion to recuse the judge, he waived any right to complain about the ruling the trial court made on his motion to recuse.[11] We conclude Garcia's claim the judge should have been recused from deciding the case lacks merit, so it is overruled.

## Written Findings

In another section of his brief, Garcia argues the trial court failed to provide him with written findings. The record, however, does not show that Garcia ever

---

[8] *Id.* 18a(a)(4)(C).

[9] *Id.* 18b(b) (providing eight grounds for recusing a judge, including when "the judge's impartiality might reasonably be questioned").

[10] *Id.* 18b(b)(1).

[11] *Barron v. State Atty. Gen.*, 108 S.W.3d 379, 382 (Tex. App.—Tyler 2003, no pet.).

asked the trial court to reduce its findings to writing. But even had Garcia done so, trial courts may—but are not required—to provide the parties with written findings.[12] The reason findings are not required is that we do not need them to decide the appeal. They are unnecessary because the issue in appeals from summary-judgment rulings is whether the summary-judgment evidence established the ruling the trial court made was correct as a matter of law. In reviewing summary-judgment rulings, a de novo standard applies.[13] For that reason, we decide whether the evidence supports the trial court's ruling without deferring to that court's evaluation of the evidence that it heard.

Because Garcia was not entitled to written findings supporting the judgment, his issue lacks merit and is overruled.

The Summary-Judgment Ruling

In the rest of his brief, Garcia argues the summary-judgment evidence reveals that there were material issues of fact that required the trial court to conduct a trial to decide whether good cause supported his decision to quit his job. According to Garcia, the summary-judgment evidence shows Toshiba failed to protect him from

---

[12] *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

[13] *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 441-42 (Tex. 1997) (explaining that "a request for findings and conclusions following summary judgment can have no purpose, should not be filed, and if filed, should be ignored by the trial court").

toxic chemicals that Garcia claims were present where he worked. The TWC in its administrative findings disagreed with Garcia, as it stated Toshiba provided Garcia with a safe place to work.

We review rulings arising from appeals over unemployment benefits de novo and determine whether substantial evidence supports the ruling.[14] Courts must presume the TWC's rulings on unemployment claims are valid, so the party seeking to set aside such rulings must demonstrate, in the suit filed in court, that the evidence does not support the ruling.[15]

Whether substantial evidence supports an administrative ruling made by the TWC is treated by courts as a question of law.[16] And we review the decision the trial court made from the case an unemployment claimant brings to the courts using a de novo standard.[17] The phrase *substantial evidence* has been defined to mean more than a scintilla.[18] In an appeal of an administrative agency's ruling, the courts will not set the ruling aside unless the evidence before the court shows the administrative

---

[14] Tex. Lab. Code Ann. § 212.202(a); *Harris Cty. Appraisal Dist. v. Tex. Workforce Comm'n*, 519 S.W.3d 113, 117-18 (Tex. 2017).

[15] *Collingsworth Gen. Hosp. v. Hunnicutt*, 988 S.W.2d 706, 708 (Tex. 1998).

[16] *Alford*, 209 S.W.3d at 103; *Tex. Workforce Comm'n v. City of Houston*, 274 S.W.3d 263, 266 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

[17] *Harris Cty. Appraisal Dist.*, 519 S.W.3d at 118.

[18] *Olivarez v. Aluminum Corp. of Am.*, 693 S.W.2d 931, 932 (Tex. 1985).

agency reached its decision "without regard to the law or the facts" such that it is "unreasonable, arbitrary, or capricious."[19]

Boiling it down, we must decide whether the summary-judgment evidence shows that the facts the administrative agency had before it reasonably support the ruling it reached on the claim.[20] In Garcia's case, resolving that issue required the TWC to decide if Garcia had *good cause* for leaving his job. Under the TWC's rules, "good cause" is "a work-related reason that would make an individual who wants to remain employed leave employment."[21] The TWC's decision revolved mainly around deciding whether the evidence showed Garcia had *good cause* for quitting his job. The reason that was important is that, under the Texas Unemployment Compensation Act, "an individual is disqualified for benefits if the individual left the individual's last work voluntarily without good cause connected with the individual's work."[22]

Here, the record contains substantial evidence that supports the TWC's finding Garcia resigned voluntarily from his job with Toshiba without good cause

---

[19] *Id.*

[20] *See Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 Tex. 1984).

[21] Texas Workforce Commission, *Eligibility & Benefit Amounts* (Oct. 11, 2019), https://www.twc.texas.gov/jobseekers/eligibility-benefit-amounts.

[22] Tex. Lab. Code Ann. § 207.045(a).

connected to his work. There is substantial evidence in the record supporting the TWC's ruling that Toshiba provided Garcia a safe place to work.[23] The evidence before the TWC shows Toshiba followed appropriate industrial hygiene practices in handling and storing the chemicals Garcia claimed he was exposed to at work. Garcia's summary-judgment evidence—one unauthenticated photograph, two material safety data sheets, and copies of Toshiba's response to the OSHA inquiry that OSHA sent to Toshiba upon receiving an anonymous complaint—fails to show that Toshiba exposed Garcia to any hazardous levels of any chemicals.[24] We conclude the summary-judgment evidence established the TWC based its decision on substantial evidence so its ruling was not unreasonable, arbitrary, or capricious.[25]

### Conclusion

We conclude that Garcia's arguments lack merit. As a result, the trial court's judgment is

AFFIRMED.

---

[23] *Mercer v. Ross,* 701 S.W.2d 830, 831 (Tex. 1986).

[24] *See Collingsworth*, 988 S.W.2d at 708 (stating that the issue on review is whether evidence introduced before the trial court showed facts in existence at the time of the TWC's decision that reasonably supported that decision).

[25] *Mercer*, 701 S.W.2d at 831.

_____
HOLLIS HORTON
Justice

Submitted on January 28, 2020
Opinion Delivered September 30, 2020

Before Kreger, Horton and Johnson, JJ.