# Supreme Court of Texas

No. 19-1108

Texas Commission on Environmental Quality and
Dos Repúblicas Coal Partnership,

*Petitioners*,

v.

Maverick County, City of Eagle Pass, Environmental Defense
Fund, Walter Herring, Ernesto Ibarra, Gabriel De La Cerda,
Mike Hernandez, Boulware and Anson Family, Ltd., and
Maverick County Environmental and Public Health Association,

*Respondents*

On Petition for Review from the
Court of Appeals for the Third District of Texas

**Argued October 27, 2021**

JUSTICE BLACKLOCK delivered the opinion of the Court.

In 2013, Dos Repúblicas Coal Partnership (DRCP) applied to the Texas Commission on Environmental Quality for renewal of a permit for wastewater discharge at a coal mine. TCEQ granted the permit. Years later, the primary question before this Court is whether, all along, DRCP was the correct permit applicant. We hold that it was.

The parties agree that TCEQ rules required both "the operator and the owner [of the facility]" to apply for a permit. 30 TEX. ADMIN. CODE § 305.43(a). DRCP owns the mine. It hired a contractor to conduct day-to-day activities at the mine. The dispute is whether DRCP or the contractor is the mine's "operator." TCEQ's rules define "operator" as "[t]he person responsible for the overall operation of a facility." *Id.* § 305.2(24). TCEQ concluded that DRCP remains the mine's operator because it retains overall responsibility for the mine's operation despite having contracted away day-to-day duties.

The court of appeals disagreed. Applying its precedent, it understood "operator" to mean "the entity responsible for [the] personal performance of causing the [facility] to function." *See Heritage on San Gabriel Homeowners Ass'n v. Tex. Comm'n on Env't Quality*, 393 S.W.3d 417, 430 (Tex. App.—Austin 2012, pet. denied). Because DRCP hired a contractor to personally perform the daily running of the mine, the court of appeals concluded that the contractor is the mine's "operator" and therefore a required—but absent—permit applicant.

When a statute or rule defines its terms, courts should not construct a restated definition using alternative verbiage that adds or subtracts substantive requirements or limiting factors. The court of appeals erred by substituting a judicially crafted definition of "operator" for the definition provided by TCEQ's rules. Even if the definition supplied by the rule's drafters leaves room for interpretation in some cases, the touchstone must remain the text of the definition—not a judicial paraphrase of it.

2

Applying the rule's definition of "operator" to this case, we hold that substantial evidence supports TCEQ's conclusion that DRCP—despite having contracted out the day-to-day running of the mine—remains "responsible" for the "overall operation" of the mine. The "personal performance" requirement proposed by Respondents imposes an additional limiting factor not dictated by the rules themselves. By requiring that a permit applicant have responsibility only for the facility's *overall* operation, the rule is best read to reject—rather than embrace—the narrowing "personal performance" requirement that dictated the outcome below. The judgment of the court of appeals is reversed, and the case is remanded to that court for consideration of the parties' remaining arguments.

## I.

The Legislature authorized TCEQ to "issue permits and amendments to permits for the discharge of waste or pollutants into or adjacent to water in the state." TEX. WATER CODE § 26.027(a). As for who must apply for such a permit or what a permit application will look like, the Legislature vested TCEQ with broad discretion: "A person desiring to obtain a permit or to amend a permit shall submit an application to [TCEQ] containing all information reasonably required by [TCEQ]." *Id.* § 26.027(b). TCEQ has adopted administrative rules governing applications for a "Texas Pollutant Discharge Elimination System" (TPDES) permit, the permit for which DRCP applied. *See generally* 30 TEX. ADMIN. CODE § 305.1 *et seq.* One such rule—which the parties agree applies here—is that "it is the duty of the operator and the owner to submit an application for a permit." *Id.* § 305.43(a).

3

Once TCEQ's executive director determines an application is "administratively complete," the applicant must provide public notice of its intent to obtain the permit. TEX. WATER CODE § 5.552(b)(1). The executive director then "shall conduct a technical review of and issue a preliminary decision on the application." *Id.* § 5.553(a). The applicant must publish notice of the preliminary decision, which is then subject to public comment. *Id.* § 5.553(b)–(c). A public meeting and a contested case hearing may follow. *See id.* §§ 5.554 (requiring public meetings during the comment period), 5.556(a) (allowing for contested case hearings).

In 2009, DRCP acquired a coal mine in Maverick County. It contracted with Camino Real Fuels, LLC (CRF) to "develop, construct, operate and perform on-going reclamation at the Mine and to remove and deliver coal from the Mine" to DRCP. The mine is near the City of Eagle Pass. Wastewater from the mine may flow into nearby waterways that feed into the Rio Grande River, from which the City gets its water supply. Because of these wastewater discharges, DRCP needed a TPDES permit. *See id.* § 26.121.

DRCP's predecessor held a TPDES permit for the mine dating to 1994 (renewed in 2001, 2006, and 2011) that was set to expire on September 1, 2015. DRCP alone applied for the renewal of the permit. DRCP started the renewal process in September 2013. Relative to the existing permit, DRCP requested permission to alter its wastewater management practices in various ways, the technicalities of which are not relevant to our decision.

4

In January 2014, TCEQ's executive director determined DRCP's application administratively complete. *See id.* § 5.552(a). The executive director completed his technical review in December 2014, after which he issued a "Notice of Application and Preliminary Decision." *See id.* § 5.553(a). This document granted a "draft permit" and gave notice of a public meeting on the permit. *See id.* § 5.553(b)–(c) (requiring notice of public meeting). During the meeting, TCEQ took public comments. *See id.* §§ 5.554, 5.555(a) (requiring the executive director to respond to relevant and material public comments).

At relevant times during the administrative process, Maverick County, the City of Eagle Pass, the Environmental Defense Fund, Walter Herring, Ernesto Ibarra, Gabriel De La Cerda, Mike Hernandez, Boulware and Anson Family, Ltd., and the Maverick County Environmental and Public Health Association (collectively "Permit Contestants") opposed the permit. *See id.* § 5.556(a), (c), (d) (authorizing "affected person[s]" to contest the executive director's decision or request a contested case hearing). They challenged TCEQ's conclusion that DRCP was the mine's "operator" and raised many other environmental and property-rights complaints.

On January 15, 2015, DRCP requested that TCEQ refer the application to SOAH for a contested case hearing. *Id.* § 5.557(a). Permit Contestants were admitted as parties. In November 2015, two administrative law judges held a four-day hearing. In addition to considering a variety of substantive objections to the permit, the ALJs considered whether DRCP's contractor, CRF, should have applied as the mine's "operator."

5

In April 2016, the ALJs issued a proposal for decision (PFD), recommending TCEQ grant the permit with "the addition of a boron limit and a requirement that aluminum be monitored." On the "operator" question, the ALJs found that DRCP was both the owner and the operator of the mine. They noted that while CRF performed the day-to-day work of running the mine, CRF was merely a contractor acting under DRCP's direction. The ALJs acknowledged testimony that DRCP only had "financial responsibility" for the mine, while CRF had "operational responsibility." They pointed to other evidence, however, tending to show that DRCP was responsible for the overall operation of the mine despite CRF's responsibility for day-to-day activities:

> DRCP is solely responsible for the acquisition and maintenance of all interests and rights in real property and the reserves, provides its requirements and expectations to CRF, approves every plan and budget prior to the incurrence of any costs by CRF, pays all actual costs during design and construction of the Mine, pays all operation costs during production at the Mine, and is required to retain, maintain, and comply with all permits.

PFD at 16. The ALJs also noted that a DRCP representative visits the mine daily to provide oversight.

TCEQ largely agreed with the PFD, but it found that the boron limit and aluminum monitoring requirements were unnecessary. *See* TEX. GOV'T CODE § 2003.047(m) (authorizing TCEQ to amend factual findings contained in a PFD). TCEQ instead required water-quality testing periodically over the life of the permit. In July 2016, TCEQ issued a final order granting DRCP's application with modifications.

Permit Contestants sued TCEQ in Travis County District Court. *See id.* § 2001.171 (authorizing judicial review of a final decision in a

6

contested case).  DRCP intervened.  Permit Contestants raised the same issues they raised before SOAH, with the addition of an objection to TCEQ's modification of the PFD.  The district court held that DRCP was not the mine's operator and that TCEQ's decision to the contrary "was not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole, and was arbitrary and capricious."  The district court affirmed TCEQ's decision on all other issues.  *Cf. id.* § 2001.174 (reviewing court may affirm in whole or in part or reverse or remand for further proceedings).

Both sides appealed.  628 S.W.3d 497, 500 (Tex. App.—Austin 2019).  DRCP and TCEQ appealed the "operator" issue.  *Id.*  Permit Contestants appealed on issues affirmed by the district court.  *Id.*  The court of appeals affirmed the district court's holding that DRCP was not the "operator" of the mine.  *Id.*  Relying on its prior decision in *Heritage v. TCEQ*, 393 S.W.3d 417, the court of appeals understood "operator" to mean "the entity responsible for its personal performance of causing the [facility] to function."  628 S.W.3d at 506.  Applying this definition, the court of appeals concluded that substantial evidence did not support TCEQ's finding that DRCP was the mine's operator.  *Id.* at 511.  As a result, the application lacked the required applicant and should have been denied.  *Id.* at 511–12.  Having concluded that the permit should not have been granted regardless of its substantive content, the court of appeals held it lacked jurisdiction over the remaining issues regarding the content of the permit.  It vacated the district court's judgment as to those issues.  *Id.* at 512.

TCEQ and DRCP ask this Court to reinstate TCEQ's decision in its entirety. They argue that the court of appeals departed from the plain text of TCEQ's administrative definition of "operator" by employing the court's own definition. They also complain of the court of appeals' application of the substantial-evidence rule. Permit Contestants contend that *Heritage*'s "more precise" definition of "operator" controls and, applying that definition, there is no substantial evidence to support TCEQ's conclusion that DRCP is the mine's operator. The parties also dispute whether the court of appeals should have—and, indeed, could have—addressed Permit Contestants' remaining issues after ruling on the "operator" issue.

## II.

Courts reviewing agency action under the Administrative Procedure Act may reverse or remand agency orders, and:

> shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (A) in violation of a constitutional or statutory provision;
>
> (B) in excess of the agency's statutory authority;
>
> (C) made through unlawful procedure;
>
> (D) affected by other error of law;
>
> (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or
>
> (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

TEX. GOV'T CODE § 2001.174(2).

The parties agree that we should review TCEQ's conclusion that DRCP is the mine's "operator" under subpart E, which asks whether the agency's decision is "reasonably supported by substantial evidence." When applying the substantial-evidence rule, "a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion." *Id.* § 2001.174. "The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency." *Tex. Health Facilities Comm'n v. Charter Med.–Dall., Inc.*, 665 S.W.2d 446, 452 (Tex. 1984).

## III.

The parties' arguments can be distilled into three questions: (1) how to define "operator"; (2) whether there was substantial evidence that DRCP is the mine's "operator"; and (3) whether the court of appeals should have ruled on the remaining issues. We address each question in turn.

## A.

Before we can apply the substantial-evidence rule to TCEQ's decision that DRCP is the mine's operator, we must understand the meaning of the word "operator," as TCEQ's rules use it. This definitional inquiry raises a predicate legal question, which we address *de novo*. *See R.R. Comm'n v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011).

The Legislature conferred on TCEQ very broad discretion to set the requirements for permit applications of this sort. *See* TEX. WATER CODE § 26.027(b). Applicants must "submit an application [] containing

all information reasonably required by [TCEQ]." *Id.* The Legislature authorized TCEQ to promulgate rules governing TPDES permits. *See id.* §§ 26.011, 26.027. TCEQ has done so. *See generally* 30 TEX. ADMIN. CODE § 305.1 *et seq.* Despite its broad statutory authority over applications, once TCEQ promulgates rules governing the application process, it must follow them. TEX. WATER CODE § 5.234 ("An application . . . shall be presented to the executive director and handled as provided . . . in the rules adopted by the [TCEQ]."). This case is about whether it did so.

Courts interpret agency regulations "using the same principles we apply when construing statutes." *Patients Med. Ctr. v. Facility Ins. Co.*, 623 S.W.3d 336, 341 (Tex. 2021). The starting point is the rule's plain text. *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). As with statutes, when a rule "assigns a particular meaning to a term, we are bound by" it. *Id.* It is often stated that courts will uphold an agency's interpretation of its own rule if the interpretation "is reasonable and does not contradict [the rule's] plain language." *R.R. Comm'n*, 336 S.W.3d at 625 (quotation omitted). Even so, courts must first determine what the rule's text means before they can decide whether the agency's interpretation contradicts the text. *See, e.g.*, *Harris Cnty. Appraisal Dist. v. Tex. Workforce Comm'n*, 519 S.W.3d 113, 119 (Tex. 2017).

The rule at issue requires both "the operator and the owner [of the facility]" to apply for a TPDES permit. 30 TEX. ADMIN. CODE

§ 305.43(a).[1]  Another provision defines the term "operator" as "[t]he person responsible for the overall operation of a facility."  *Id*. § 305.2(24).  In a dispute over who must apply as the "operator," courts are bound by the definition provided in TCEQ's rules, just as they are bound when the Legislature defines terms in a statute.  *See Combs*, 340 S.W.3d at 439.

Following its precedent, the court of appeals understood "operator" to mean "the entity responsible for its personal performance of causing the facility to function."  628 S.W.3d at 505 (quoting *Heritage*, 393 S.W.3d at 430).  In *Heritage*, landowners challenged TCEQ's order concluding that Waste Management was the "operator" of a landfill.  393 S.W.3d at 422, 426.[2]  The court of appeals agreed with TCEQ.  In so

---

[1] The full text of the relevant provision is:

(a) It is the duty of the owner of a facility to submit an application for a permit or a post-closure order.  However, if the facility is owned by one person and operated by another and the executive director determines that special circumstances exist where the operator or the operator and the owner should both apply for a permit or a post-closure order, and for all Texas Pollutant Discharge Elimination System permits, it is the duty of the operator and the owner to submit an application for a permit.

The parties agree that only the final portion of the provision, specific to TPDES permits, applies here.

[2] Petitioners argue that *Heritage* has no application here because it involved a different category of permit.  But the disputed definition of "operator" applies to both wastewater and solid-waste permits.  *See* 30 TEX. ADMIN. CODE § 305.2 ("The following words and terms, [including 'operator,'] when used in this chapter, have the following meanings."); *see also RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 126 (Tex. 2015) ("Generally, the law recognizes 'a natural presumption that identical words used in different parts of the same act are intended to have the same meaning.'" (quoting *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932))).

11

doing, it relied on dictionary definitions of "operates"—"to cause to function usu[ally] by direct personal effort"—and "operation"—"doing or performing especially of action." 393 S.W.3d at 428–30 (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002)). After lengthy analysis, the court summarized its understanding of "operator" using the "personal performance" language quoted above. *Id*. at 430.[3]

It bears noting that *Heritage* affirmed TCEQ's decision that Waste Management was the "operator" and therefore the correct applicant. When *Heritage* is read in its context, as all judicial decisions should be, the court employed the "personal performance" concept not to exclude parties from the definition of "operator" but to explain why the definition included Waste Management. And it did so within a statutory scheme that gives TCEQ remarkably broad discretion to determine which entities must file applications. *See* TEX. WATER CODE § 26.027(b).

Nevertheless, the court of appeals below applied the "personal performance" paraphrase as if it were the governing definition of "operator." Applying *Heritage* in this way was error. A judicial paraphrase of a legislatively supplied rule of decision—no matter how well-reasoned or suitable to the case then before the court—does not become the rule of decision applicable to future cases. That role is reserved for the text chosen by the Legislature—or, in this case, by an

---

[3] Even if the court of appeals was correct that DRCP was the wrong applicant, Permit Contestants would only be entitled to relief under the APA "if substantial rights of the appellant have been prejudiced because" of the error. TEX. GOV'T CODE § 2001.174(2). Petitioners have not argued that Permit Contestants do not satisfy this requirement, and we express no opinion on that question.

agency acting with the Legislature's permission. *See PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 305 (Tex. 2019) (holding that a description of a statute in a judicial "opinion is not itself the rule of decision. That role is reserved for the statute.").

Here, the governing definition of "operator," to which courts are not free to add or subtract verbiage, is "[t]he person responsible for the overall operation of a facility." 30 TEX. ADMIN. CODE § 305.2(24). Relative to the definition provided by the rule, the *Heritage* reformulation injects the limiting principle of "personal performance." The effect on the definition is to replace the rules' use of "overall operation" with the court's use of "personal performance." Understanding "operation" to mean solely "personal performance" may make it easier to identify the operator by clarifying and limiting the scope of what counts as "operation." But a court's principal goal when interpreting text is not to achieve simplicity or ease of application— though these would be by-products of a well-drafted rule. Instead, a court's duty is to stick to the text chosen by the rule-makers, without adding to it or subtracting from it.

So what does it mean to be "responsible for the overall operation of the facility"? Permit Contestants argue that "operation" entails "flipping the switches"—personally performing the tasks required to operate the facility. TCEQ and DRCP, on the other hand, argue that "operation" entails the ultimate authority to make decisions about how the facility will be operated. In a vacuum, neither is an unreasonable understanding of the word "operation." But we are not in a vacuum. We are applying the text of the rule. And the rule itself tells us what kind

13

of operation it envisions—"*overall* operation." We need look only at the modifier "overall," a word chosen by the rulemakers, to resolve the parties' disagreement about the rule's meaning.[4]

The question, properly framed, is not what "operation" means. Looking at the entire definition, the questions are what "overall operation" means, and what it means to be "responsible" for it. When we focus on all the words contained in the rule—not on dictionaries defining one of them—it becomes clear that TCEQ's approach is well-supported by the text of its rule. The court of appeals erred by excluding from "operator" those entities who are responsible for overall operations even though they may not conduct daily operations.[5]

---

[4] Permit Contestants argue that the Court should look to the federal Environmental Protection Agency's (EPA) view of "operator" because TCEQ amended its rules to include the operator requirement at the behest of the EPA. *See* 15 Tex. Reg. 5492, 5493 (1990). Permit Contestants assert that "EPA's understanding as early as 1980 was that operational control, not financial or some other class of control, was the marker of an entity that needed to apply for the permit." Even so, EPA's definition is not any narrower than TCEQ's. As the court of appeals noted, "[t]he federal regulations do not specifically define 'operator' as distinct from 'owner'; rather, a definition is provided for 'owner or operator,' which 'means the owner or operator of any facility or activity subject to regulation under the NPDES program.'" 628 S.W.3d at 504 n.6 (quoting 40 C.F.R. § 122.2). And, EPA reviewed and had no objection to the draft permit here.

[5] TCEQ advances its own restatement of the rule's definition of "operator": "an entity (owner or not) that is liable to be called on to answer, in general and taking everything into account, for the mine's management or manner of functioning." We decline to adopt that formulation, not because of any obvious defect in its substance, but because doing so would risk falling into the same error as the court of appeals. TCEQ's proffered paraphrase is full of words not contained in the rule itself, such as "liable," "in general," and "management." Such concepts may be helpful, in some cases, to courts grappling with what it means to be "responsible for the overall operation of the

We next address whether substantial evidence supports TCEQ's conclusion that DRCP was the mine's operator. "The question whether an agency's determination meets [the substantial-evidence] standard is one of law." *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 566 (Tex. 2000). Under substantial-evidence review, we consider "whether any evidence supports the [agency's] determination." *Pub. Util. Comm'n v. Tex. Indus. Energy Consumers*, 620 S.W.3d 418, 427 (Tex. 2021). We ask "not whether the agency's decision is correct, but whether the record demonstrates a reasonable basis for it." *Ne. Indep. Sch. Dist. v. Riou*, 598 S.W.3d 243, 251 (Tex. 2020). "The findings, inferences, conclusions, and decisions of an administrative agency are presumed to be supported by substantial evidence, and the burden is on the contestant to prove otherwise." *Charter Med.–Dall., Inc.*, 665 S.W.2d at 453.

In the Findings of Fact section of its Order granting the permit, TCEQ concluded the following:

> 40. Based on the Contract Mining Agreement signed by Mr. Gonzalez Saravia Coss, DRCP is solely responsible for the acquisition and maintenance of all interests and rights in real property and the reserves, provides its requirements and expectations to CRF, approves every plan and budget prior to the incurrence of any costs by CRF, pays all actual costs during design and construction of the Eagle Pass Mine, pays all operation costs during production at the

---

facility." In other cases, undue focus on these extraneous words might inject limiting or expanding factors not justified by the text of the rule. If TCEQ wants to amend its rules' definition of "operator" to include these additional concepts, it should do so through the appropriate process, not through litigation.

15

Eagle Pass Mine, and is required to retain and maintain all permits.

41. DRCP has an office in Eagle Pass, and a DRCP representative visits the site on a daily basis to oversee all the functions for which it has responsibility.

42. DRCP has ownership and control of mine operations, including activities subject to the TPDES permit; has responsibility over permit compliance, including the TPDES permit; is integrally involved in the activities at the Eagle Pass Mine; and has financial responsibility over the operations at the Eagle Pass Mine.

Based on these findings of fact, TCEQ concluded that DRCP was the proper permittee as both the mine's owner and its operator.

Permit Contestants object to TCEQ's conclusion primarily because, in their view, it cannot be squared with *Heritage*'s emphasis on personal performance, which they contrast with financial responsibility or high-level oversight. We have already explained why the court of appeals should not have viewed "operation" as entailing only personal performance. Any analysis of the evidence through the *Heritage* lens is therefore unhelpful, and this renders most of Permit Contestants' arguments about the evidence inapposite.[6] As explained above, the rule's definition of "operator" includes the decision-making entity with responsibility for overall operations, even if that entity is not personally performing the operations. This understanding of who qualifies as an

---

[6] Respondents come close to conceding that, unless *Heritage*'s understanding of "operator" controls, they cannot win under the substantial-evidence rule. *See* Maverick Cnty. Resp. Br. at 11 ("Unless the court of appeals was wrong in its understanding of the meaning of 'operator,' the evidence to which Petitioners point to claim that DRCP is the operator just does not reach the 'scintilla' level; it is so weak as to do no more than create a mere surmise or suspicion of the fact it is claimed to support.").

"operator" must inform the inquiry into whether substantial evidence supports the conclusion that DRCP is one.

Viewing the record as a whole and employing an understanding of "operator" based solely on the rule's text, we hold that substantial evidence in the record supports TCEQ's conclusion that DRCP is the mine's operator. As noted above, TCEQ made several findings of fact in support of its conclusion that DRCP is the mine's "operator." DRCP owns the mine and "control[s]" mine operations, including activities subject to the TPDES permit. DRCP is "integrally involved in the activities" at the mine. In addition to having "financial responsibil[ity]" for mine operations,[7] DRCP must approve each plan and budget before CRF may incur costs. DRCP "provides its requirements and expectations to CRF."[8] DRCP is "solely responsible" for the acquisition and maintenance of all interests and rights in real property and reserves. DRCP is responsible for TPDES permit compliance. DRCP retains and maintains all permits. And finally, a DRCP representative from DRCP's Eagle Pass office "visits the site on a daily basis to oversee

---

[7] The parties and the court of appeals focus on a distinction between "financial responsibility" and "operational responsibility." We need not explore that distinction, however, because even assuming the distinction is valid, some evidence supports the conclusion that DRCP retained operational control—particularly, the requirement that it approve plans and budgets, its provision of requirements and expectations to CRF, its responsibility for permit compliance, and the daily presence of its representative to provide oversight.

[8] A DRCP officer described the relationship: "DRCP provides its requirements and expectations to CRF. For example, this could relate to amount of coal required. Based on these requirements, CRF develops a mine plan in which it describes the necessary steps to comply with DRCP's expectations. . . . DRCP must, however, approve the plan and budget prior to the incurrence of any costs by CRF."

all the functions for which [DRCP] has responsibility." *See* TCEQ Order, Findings of Fact at 5, findings 40–42.[9]

All of this evidence together demonstrates "a reasonable basis in the record" on which TCEQ could have concluded that DRCP is not merely a passive owner who has given responsibility for overall operations to someone else. Instead, substantial evidence supports TCEQ's conclusion that DRCP was the entity "responsible for the overall operation of the facility" and therefore the correct permit applicant.

## C.

Permit Contestants raised several other objections to substantive elements of TCEQ's decision, such as whether TCEQ properly conducted its "antidegradation review" and whether the permit should impose stricter limits on aluminum and boron. The district court affirmed TCEQ's decision on all these issues.

After holding DRCP was not the mine's operator and thus the incorrect permit applicant, the court of appeals decided it could not reach the remaining issues and vacated the part of the district court's judgment addressing them. 628 S.W.3d at 512. The court of appeals held that addressing the remaining issues would amount to rendition of an advisory opinion. For this proposition, it cited only the general prohibition on advisory opinions. *See Valley Baptist Med. Ctr. v.*

---

[9] Maverick County makes a token effort in this Court to contest these fact findings as unsupported by the record. It does not explain how the findings are unsupported, however, instead merely asserting that the findings overstate or misstate the record evidence. The burden is on Permit Contestants to show that TCEQ's findings are not supported by substantial evidence. *Charter Med.–Dall., Inc.*, 665 S.W.2d at 453. They have failed to make that showing here.

*Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) ("Under article II, section 1 of the Texas Constitution, courts have no jurisdiction to issue advisory opinions.").

TCEQ, joined by DRCP, argues that the court of appeals erred by failing to address the remaining issues. They contend the court of appeals had jurisdiction to reach these issues, and they ask this Court to reach them even though the court of appeals did not. Although we decline to reach the remaining issues, we hold that the court of appeals did not lack jurisdiction to reach them and therefore could have done so.

The APA provides that a court reviewing an agency decision after a contested case "may affirm the agency decision in whole or in part." TEX. GOV'T CODE § 2001.174(1). The district court exercised its authority under this provision by affirming TCEQ's decision in part. Despite reversing on the improper-applicant issue, the district court affirmed TCEQ's decision as to the remaining issues. To the extent the court of appeals suggested the district court erred by reaching the remaining issues, we disagree. The APA plainly gave both the district court and the court of appeals the authority to affirm in part, as the district court did, even if other issues required partial reversal or remand to the agency. The only remaining question is whether, as the court of appeals suggested, a judicial ruling on the remaining issues violated the constitutional prohibition on advisory opinions. It did not.

"The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). We see nothing "abstract" in the parties' ongoing, vigorous dispute over TCEQ's

19

scientific and environmental findings regarding this mine.  The parties are engaged in a lengthy, complicated, and very expensive administrative process, of which judicial review is but a part—and of which the parties' scientific and environmental disputes are but a part.  Cases like this one frequently bounce back and forth between the agency and the courts or between levels of the court system.  It may turn out, when the dust settles, that one element or another of a court's decision ended up being irrelevant to the ultimate outcome.  That does not mean the court lacked jurisdiction to decide that part of the case.  Even assuming the remaining issues were rendered superfluous by the court of appeals' resolution of the "operator" question, the possibility remained that this Court would take a different view of the "operator" question, as we have done.  The dispute over the remaining issues therefore remained live, and its resolution still impacted the parties' rights—even though the extent to which it did depended on how the case progressed in the future.  Resolving the remaining issues would not have amounted to an advisory opinion by the court of appeals.[10]

---

[10] *See, e.g.*, *In re Camp Lejeune, N.C. Water Contamination Litig.*, 2012 WL 12869566, at *2 (N.D. Ga. May 11, 2012) ("While the court understands Plaintiffs' concerns that the court is issuing an advisory opinion, it is not unusual for a court to rule on alternative arguments and the parties have briefed both arguments and provided oral argument to the court. Ruling on both arguments would allow the Court of Appeals to consider them at the same time rather than extending the litigation by returning to the district court and back up to the Court of Appeals a second time."); *cf. Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996) ("We further conclude that the appellate court may consider other grounds that the movant preserved for review and trial court did not rule on in the interest of judicial economy.").

The prudential practice of courts to decline to reach issues not necessary to the disposition of a case should not be confused with the constitutional prohibition on advisory opinions. There is overlap between the two, of course. But particularly in a complex administrative appeal, litigation would become unmanageable if it were the rule that every issue not strictly necessary to each court's disposition of the case were beyond that court's constitutional power to decide. The court of appeals erred by vacating the district court's judgment as to the remaining issues. Both the district court and the court of appeals had jurisdiction to address those issues. The court of appeals *could have* reached them. Whether the court of appeals was *obligated* to reach them is a separate issue, to which we now turn.

Petitioners argue the court of appeals was obliged to reach the remaining issues. It observes that the APA allows courts of appeals to "affirm the agency decision . . . in part." TEX. GOV'T CODE § 2001.174(1). Petitioners argue that "in part" carries with it the premise that the *other* part of the judgment reverses the remaining parts of the agency's decision, suggesting that the entire decision has been reviewed. We do not read Section 2001.174(1) to obligate courts of appeals to reach all issues raised by the parties regardless of whether the issues are necessary to dispose of the appeal. The provision uses "may" in an apparent attempt to ensure courts have discretion to dispose of cases as they see fit. If the Legislature sought to impose a requirement— unknown elsewhere in the law—that courts of appeals reach unnecessary issues, we would expect it to be much more clearly stated.

TCEQ further contends that the court of appeals was obligated by Rule of Appellate Procedure 47.1 to reach the remaining issues. Rule 47.1 requires courts of appeals to "hand down a written opinion that . . . addresses every issue raised and necessary to final disposition of the appeal." TCEQ argues that resolution of the remaining issues was "necessary to final disposition of the appeal" because the improper-applicant problem did not infect the entire proceeding. TCEQ suggests the improper-applicant problem can be fixed on remand to the agency without necessarily disturbing TCEQ's findings on other matters, although it does not clearly state how this would happen. Permit Contestants disagree. They argue that, if the applicant is improper, the entire process has been for naught and must be completely redone. If that is true, as they argue, then it was not necessary for the court of appeals to review TCEQ decisions that would need to be decided anew in a second proceeding.

We need not resolve this dispute, which raises doubtful questions of administrative procedure that would be better decided by this Court on more complete briefing. One way or another, the court of appeals' judgment will be reversed, and this case will be remanded to the court of appeals for consideration of the remaining issues. Whether the court of appeals was obligated by Rule 47.1 to address those issues in the past, it appears it will be obligated to address them in the future—assuming the parties maintain their current positions.

Finally, TCEQ and DRCP ask this Court to address the remaining issues without the benefit of the court of appeals having done so. "When presented with an issue the court of appeals could have but did not

22

decide, we may either remand the case or consider the issue ourselves." *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 124 (Tex. 2018) (citing TEX. R. APP. P. 53.4). "[O]rdinarily a case will be remanded to the court of appeals for further proceedings when we reverse the judgment of the appeals court and the reversal necessitates consideration of issues raised in but not addressed by that court." *State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency ($90,235)*, 390 S.W.3d 289, 294 (Tex. 2013). We conclude that our review of these issues, if it becomes necessary, would benefit from the court of appeals having addressed them first. We will take the ordinary course and remand the remaining issues for consideration by the court of appeals.

## IV.

The judgment of the court of appeals is reversed. The part of the district court's judgment vacated by the court of appeals is reinstated without regard to the merits. The case is remanded to the court of appeals for further proceedings consistent with this opinion.

James D. Blacklock
Justice

**OPINION DELIVERED:** February 11, 2022