**Opinion filed January 24, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00152-CV

_____

**JEFF NEELY, Appellant**

**V.**

**MIDLAND COMMUNITY THEATER BOARD OF TRUSTEES; JESSI WILLMAN; JOSHUA SPARKS; BRAD BULLOCK; LISA DURGIN; BRENNAN BERRY; JEFF BRYDEN; KENNY LUNDA; BRAD MCGEE; SHAUN RAINEY; PETER SCHRENKEL; JOHN WILKINSON; BROCKETT, MCNEEL & POCSIK LLP; PAUL MANGUM; STEVE POCSIK; AND LAURA WOLF, Appellees**

**On Appeal from the 142nd District Court**
**Midland County, Texas**
**Trial Court Cause Nos. CV59205 and CV59782**

**M E M O R A N D U M   O P I N I O N**

Appellant, Jeff Neely, appeals the trial court's orders dismissing his suit against Appellees pursuant to Rule 91a of the Texas Rules of Civil Procedure. *See*

TEX. R. CIV. P. 91a.  The trial court dismissed all causes of action against Appellees Midland Community Theater Board of Trustees (MCT),[1] Jessi Willman, Joshua Sparks, Brad Bullock, Lisa Durgin, Brennan Berry, Jeff Bryden, Kenny Lunda, Brad McGee, Shaun Rainey, Peter Schrenkel, John Wilkinson, Brockett, McNeel & Pocsik LLP (BMP), and Paul Mangum in a series of orders.  The trial court then severed the claims against those defendants, resulting in the orders becoming final and appealable.  Later, the trial court also dismissed all causes of action against Appellees Laura Wolf and Steve Pocsik.  We granted Appellant's request to consolidate the appeals.

Appellant, appearing pro-se, presents ten diffuse issues on appeal, which we reorganize as follows: (1) "Did the Court acquire and take into consideration the proper information prior to making the decision to grant the Motions to Dismiss?"; (2) "Appellant failed to mention the Appellees by name throughout the Petition"; (3) "The [Findings of Fact and Conclusions of Law] contain dispositive statements of a material nature which preclude the Appellant from understanding the Court's decision"; (4) "What is Mr. Pocsik's role in all of this wrongdoing?"; (5) "Are 'He still has others to pursue' and 'I forgot' viable and proper legal defenses?"; (6) "Does liability protection apply without limits to those on the Board of Governors of a non-profit?"; (7) "Did the Appellees ratify the conduct of those who did the bad acts on their behalf?"; (8) "Did an employment relationship exist?"; (9) "What is the role of the Board of Trustees and are they a part of the Board of Governors?"; and (10) "Did a Duty to Disclose exist [in] regards [to] the report clearing Appellant's name of sexual misconduct allegations?"  We affirm.

---

[1]The parties agree that "Midland Community Theater Board of Trustees" is a misnomer, and the correct name is "MCT Endowment Corporation."  We will refer to them as MCT for simplicity.

*Factual and Procedural History*

A. *The Pleadings*

Appellant's original petition, which consisted of fifty-one pages, alleged numerous causes of action against Appellees, as well as the Midland Community Theater, Bryce Guerrero, Chris Hall, and Tim Jebsen. The causes of action include: (1) defamation per se; (2) defamation; (3) breach of employment contract; (4) promissory estoppel; (5) common-law fraud; (6) fraud by nondisclosure; (7) negligent misrepresentation; (8) tortious interference with a contract; (9) breach of fiduciary duty; (10) legal malpractice; and (11) intentional infliction of emotional distress. Appellant alleged that he volunteered with the Summer Mummers, an annual fundraising program for Midland Community Theater, beginning in 2003. In 2019, Appellant joined the Summer Mummers Board of Directors. But, matters subsequently began to sour for Appellant.

Appellant alleged that he experienced "suicidal ideations and attempt based on activities happening at the theater in May of 2021," which he shared with the volunteer coordinator for Midland Community Theater. Thereafter, a "sitting member of The Board and community stakeholder at Midland Community Theater, took [Appellant] into a closed room, removed his mask, got very close to [Appellant], and threatened him."[2] Appellant sought assistance from Willman, then-president of the board of governors. After Appellant inquired about changes to the vetting process for board members, "[a] series of emails was then made accusing [Appellant] of a lot of things he had never been accused of," which, according to Appellant, led to further deterioration of his mental health.

Appellant claimed that, in November 2021, during the Summer Mummers annual meeting, "Mr. Moore, Mrs. Alexander, Mrs. Willman, and others defamed

---

[2]In Appellant's brief, he explains the "threat" as "threaten[ing] [Appellant] to do what he was told or he had an obligation to quit his role."

[Appellant] and fought with passion to have him removed from service on the board"; however, Appellant was nonetheless elected to the board. The following week, "The Board was informed that Mrs. Alexander, as a result of her behavior towards [Appellant] at the annual meeting, would be removed from her involvement with Summer Mummers and she would be replaced." On December 5, 2021, Jebsen invited Appellant to a meeting, where he notified Appellant that Appellant was "being investigated" because Moore claimed that Appellant threatened the lives of Moore and Moore's wife. Several days later, Jebsen provided Appellant with a letter allegedly "clearing him of wrong[ ]doing."

However, on December 15, 2021, Hannah Torres, a member of the Summer Mummers, accused Appellant of "sexual misconduct." On December 21, 2021, Jebsen provided Appellant with another letter notifying him that he was the subject of an investigation, causing his mental health to again deteriorate. On January 18, 2022, Appellant met with an attorney who was hired by the Midland Community Theater to investigate an official complaint by Wendi Guerrero. The attorney disclosed three accusations against Appellant during the meeting, all of which "[Appellant] denie[d] in the strictest and fullest manner." At that time, Appellant "began complaining openly about retaliation and other issues." According to Appellant, Pocsik subsequently notified him that the attorney's report "completely cleared [his] good name and placed blame for the deteriorating condition at the theater on the leadership and behavior of Mr. Jebsen."

On January 24, 2022, Hall, then-president-elect of the board of governors, "called [Appellant] with the intent to enter a contract to sign a contract." Appellant alleged that he and Hall entered into a contract "speaking on behalf of the entire board of governors," wherein Appellant had until March 2, 2022, to sign a contract to serve on the board of the Mummer's Advisory Committee (MAC). Despite this, the "MAC held a meeting and voted to remove [Appellant] from board service for

4

'not signing the contract to serve on the board by February 2.'" Appellant asserted that such action constituted a breach of contract and that Jebsen sent him an e-mail "verifying that his contract had been breached."

At a board meeting on February 17, 2022, Appellant "walked away" from his board seat after Jebsen used his influence to "corrupt[] the thoughts of others and intentionally cast [Appellant] in a bad light to cause him harm." Appellant offered his art and framing gallery, The FaFa Gallery, to host a meeting held by Ben Spencer, who disclosed that "shortly after the meeting was announced on [F]acebook[,] he received several calls asking why he would ever come around [Appellant] or his gallery again." Appellant also alleged that two Summer Mummer performers, Roy Prewitt and Whitney Smith, published posts on Facebook that were highly defamatory toward Appellant. Appellant similarly alleged that Hall's wife spoke openly "about how she tells everyone to 'stay away from The FaFa because you just never know what that guy is going to do.'" Finally, Appellant alleged that Danny Holeva, executive director of the Arts Council of Midland, instructed his employee to distance herself and the Arts Council from Appellant because of the accusations of sexual misconduct.[3]

### B. *The Rule 91a Motions to Dismiss*

After Appellant filed suit, Appellees began filing a series of motions to dismiss pursuant to Rule 91a. *See id.* (providing for the dismissal of a cause of action that has no basis in law or fact on motion and without evidence). We summarize the basis of each motion as follows: Sparks, Bryden, Schrenkel, Wilkinson, and Mangum's motion to dismiss argued that the trial court should dismiss the causes of action against them because "not one of the asserted causes of action have any basis in law, even if the allegations, taken as true, together with inferences reasonably

---

[3]Although Spencer, Prewitt, Smith, and Holeva are mentioned by name in Appellant's petition, he did not identify them as defendants.

drawn from them, because the [Appellant] is not entitled to the relief sought"; Sparks, Bryden, Schrenkel, Wilkinson, and Mangum further argued that the claims have no basis in fact because Appellant made no factual allegations against them in his pleadings; Sparks, Bryden, Schrenkel, Wilkinson, and Mangum subsequently adopted and incorporated by reference the arguments made by the other Appellees; MCT similarly argued that Appellant had not "alleged a single fact as to the Trustees that would support any of the [pleaded] causes of action"; and MCT further argued that there were no factual pleadings alleging various required elements of each cause of action.

Bullock, Durgin, Berry, Lunda, McGee, and Rainey argued that Appellant "has not alleged a single fact as to Movants that would support any of the pled causes of action." Bullock, Durgin, Berry, Lunda, McGee, and Rainey also noted that Appellant failed to plead facts that would support various required elements of each cause of action.

Willman argued that Appellant "has not alleged a single fact as to Movant that would support any of the pled causes of action." Willman also asserted that Appellant's pleadings did not contain facts in support of various required elements of each cause of action.

BMP moved to dismiss Appellant's cause of action against it on the basis that Pocsik, and by extension BMP, never represented Appellant or established any attorney-client relationship, so it could not be liable for any alleged act by Pocsik. BMP asserted that Appellant's pleading never alleged an attorney-client relationship and that it was evident that one did not exist. Pocsik similarly asserted that he never represented Appellant but additionally argued that, as pleaded by Appellant, he was immune from any potential liability under the doctrine of attorney immunity. Finally, Wolf's motion to dismiss similarly argued that the trial court should dismiss Appellant's claims against her because his petition "d[id] not allege sufficient facts

6

to demonstrate a viable, legally cognizable right to relief" and that the "allegations, taken as true with inferences reasonably drawn from them, do not entitle [Appellant] to the relief sought." Wolf also challenged Appellant's causes of action, arguing that facts supporting various required elements of each claim were missing.

C. *Appellant's Response*

Appellant filed a response to Appellees' motions.[4] As to MCT, Appellant responded by arguing that it was liable because "Chris Hall was exceptionally adamant that he spoke 'on behalf of **THE ENTIRE BOARD OF GOVERNORS**.'" Appellant posited that "[i]f the Board of Trustees/MCT Endowment Corporation still maintains an advisory role to the Board of Governors, then the entity is open to liability for [Appellant's] harm and damages." Appellant further contended that his pleading "made clear" that Pocsik represented the theater and was a member on the Board of Governors and that Jebsen, the theater's executive director, acted in concert with others on behalf of the theater.

As for Willman, Bullock, Durgin, Berry, Lunda, McGee, and Rainey, Appellant responded that they were all active members of the Board of Governors and were "referred to many times in [Appellant's] Original Petition." Appellant reasoned that they were each liable because they were aware of the actions and never "made any attempt at correcting the demonstrated behaviors of the specifically named bad actors," thus "adopt[ing] the conduct by ratification if nothing else." Appellant specified that Willman, as immediate past president of the Summer Mummers board, was active in the formation of the MAC, which was used to initiate the harm and damages against Appellant. Appellant contended that Willman "personally made some sort of false official complaint" against Appellant. Appellant conceded that Willman's actions "may or may not be relevant to the suit,"

---

[4]Appellant "adopt[ed] and incorporate[ed] by the motions to dismiss filed by Sparks, Bryden, Schrenkel, Wilkinson, and Mangum; however, no such response appears in the record.

but he asserted that they were discoverable so the motion to dismiss should be denied.

Appellant argued that the trial court should deny BMP's motion to dismiss because Pocsik, as partner, was actively representing the theater, causing BMP to be vicariously liable for his actions. Appellant further argued that Pocsik was liable for breach of fiduciary duty because he "never disclosed his genuine conflict of interest—that his wife and Wendi Guerrero are best friends." Appellant argued that all movants were liable for legal malpractice by "[a]dopting the bad acts of another, [or] by ratification if nothing else." Finally, Appellant cited to the Texas Workforce Commission's factors for determining whether a person is an employee or an independent contractor to establish that he and the individual defendants are employees, even though they may be volunteers. *See* 40 TEX. ADMIN. CODE ANN. § 821.5 (2024) (Tex. Workforce Comm'n, Employment Status: Employee or Independent Contractor).

Because Pocsik's motion to dismiss was filed after Appellant's response, Appellant filed a separate response to Pocsik's motion. Appellant's more-than-ninety-page response included evidentiary support, such as a transcript of a meeting between Appellant and Pocsik and quoted text from Appellant's complaint against Pocsik to the State Bar of Texas, and the response from the Office of the Chief Disciplinary Counsel. Appellant then argued that, contrary to Pocsik's motion to dismiss, Appellant did not sue Pocsik only in his capacity as the theater's counsel but also as a member of the Board of Governors.[5]

---

[5]Appellant filed a 586-page amended petition after the trial court granted all but Pocsik's and Wolf's motions to dismiss. However, Appellant's amended petition was untimely because it was filed *after* the hearings on the 91a motions. *See* TEX. R. CIV. P. 91a.5(b), (c) (requiring an amended petition be filed at least three days before the date of hearing and prohibiting the trial court from considering the amended petition if it was not timely filed).

D.    *The Trial Court's Rulings*

The trial court granted each motion to dismiss but did not state the grounds on which it did so.  This appeal followed.

*Standard of Review*

Rule 91a of the Texas Rules of Civil Procedure provides that "a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact." TEX. R. CIV. P. 91a.1.  "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought."  *Id.*  "A cause of action has no basis in fact if no reasonable person could believe the facts pleaded."  *Id.*

We review de novo whether a cause of action has any basis in law or fact.  *San Jacinto River Auth. v. Medina*, 627 S.W.3d 618, 628 (Tex. 2021); *In re Estate of Sheshtawy*, 478 S.W.3d 82, 86 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see also In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding) (explaining that "whether a defendant is entitled to dismissal under the facts alleged is a legal question"); *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (per curiam) (citing *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)).  Under a Rule 91a de novo review, "the availability of a remedy under the facts alleged is a question of law and the rule's factual-plausibility standard is akin to a legal-sufficiency review."  *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016); *Aaron v. Caddo Minerals, Inc.*, No. 11-22-00020-CV, 2023 WL 5622115, at *3 (Tex. App.—Eastland Aug. 31, 2023, pet. denied) (mem. op.).

We look solely to the pleading and any attachments permitted by Rule 59 of the Texas Rules of Civil Procedure to determine whether the dismissal standard is satisfied.  *Sanchez*, 494 S.W.3d at 724; *Estate of Mathis*, 543 S.W.3d 927, 931 (Tex. App.—Eastland 2018, no pet.); *see* TEX. R. CIV. P. 59, 91a.6.  Rule 59 provides that

"[n]otes, accounts, bonds, mortgages, records, and all other written instruments, constituting, in whole or in part, the claim sued on, or the matter set up in defense, may be made a part of the pleadings" by attaching or incorporating them into the body. TEX. R. CIV. P. 59; *see Longhorn Creek Ltd. v. Gardens of Connemara Ltd.*, 686 S.W.3d 418 (Tex. App.—Dallas 2024, pet. filed).

To determine whether the cause of action has a basis in law or fact, we construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleading. *Wooley*, 447 S.W.3d at 76. In doing so, we apply the fair-notice standard of pleading. *Id.* A threadbare recitation of the elements of a cause of action and mere conclusory statements will not suffice. *Vasquez v. Legend Nat. Gas III, LP*, 492 S.W.3d 448, 451 (Tex. App.— San Antonio 2016, pet. denied) (citing *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 754 (Tex. App.—Beaumont 2014, pet. denied)); *see also Tobias v. SLP Brownwood LLC*, No. 11-19-00247-CV, 2021 WL 2584505, at *3 (Tex. App.— Eastland June 24, 2021, no pet.) (mem. op.).

A Rule 91a motion to dismiss must identify each cause of action being challenged and must state specific reasons why the challenged causes of action have no basis in law or fact. TEX. R. CIV. P. 91a.2. To avoid a ruling on the motion, the nonmovant has the option to nonsuit or amend the challenged causes of action at least three days before the hearing. *Id.* R. 91a.5(a). If the nonmovant does not timely nonsuit or amend, however, the trial court must rule on the motion. *Id.* R. 91a.5(c). "If an order granting a Rule 91a motion does not specify the grounds for dismissal, a party appealing the order must challenge every ground upon which the trial court could have granted the motion." *Estate of Savana*, 529 S.W.3d 587, 592 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Parkhurst v. Office of Att'y Gen. of Tex.*, 481 S.W.3d 400, 402 (Tex. App.—Amarillo 2015, no pet.).

*Analysis*

A. *The Trial Court Looks Only to the Pleadings and Rule 59 Attachments*

In what we construe as his first issue, Appellant argues that the trial court erred by not considering his copious pleading attachments in response to Appellees' motions to dismiss. Appellant contends that "other written instruments" as set out in Rule 59 of the Texas Rules of Civil Procedure allows the trial court to consider any "evidence" that is reduced to writing. *See* Tex. R. Civ. P. 59. But Appellant is mistaken. Rule 91a, together with Rule 59, "permits consideration of only a 'narrow class of exhibits' in addition to the pleading of the cause of action. *See Longhorn Creek*, 686 S.W.3d at 427 (quoting *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 654 (Tex. 2020)). Here, no "written instrument," serves as the basis for the claims brought. *See* Tex. R. Civ. P. 59. Accordingly, the trial court was precluded from considering any evidence proffered by Appellant, including transcribed testimony or other documents. *Id.*; *see Longhorn Creek*, 686 S.W.3d at 418, 427 ("The court may not resort to evidence proffered by the [R]ule 91a movant, such as through affidavits, transcribed testimony, or documents in deciding whether the non-movant's claims enjoy no basis in law."); *Strickland v. iHeartMedia, Inc.*, 665 S.W.3d 739, 742 (Tex. App.—San Antonio 2023, pet. denied) ("[T]he trial court could not have considered evidence in deciding whether to grant the motion to dismiss."). Similarly, we may only look to the pleadings and documents permitted by Rule 59, not the "evidence" provided by Appellant at the trial court level or in his appendices on appeal. *See* Tex. R. Civ. P. 59, 91a.6; *Mathis*, 543 S.W.3d at 931; *see also Longhorn Creek*, 686 S.W.3d at 427; *Quorum Int'l v. Tarrant Appraisal Dist.*, 114 S.W.3d 568, 572 (Tex. App.—Fort Worth 2003, pet. denied) (stating that appellate court cannot look outside trial court's record in effort to discover relevant facts).

The trial court did not err in refusing to consider the documents that Appellant proffered in response to Appellees' Rule 91a motions. *See Longhorn Creek*, 686 S.W.3d at 427 ("Rule 59 hardly grants carte blanche to litigants to attach unauthenticated, hearsay, unduly prejudicial, or other traditionally objectionable documents to pleadings and have them considered as 'evidence' in the traditional sense. Rule 59 pleading exhibits merely imbue or augment the allegations of the pleading to which they are attached. They gain no talismanic quality by being attached to a pleading and, perforce, they are dispositive of nothing without more. Simply, unless later offered and admitted into evidence, pleading exhibits are not evidence.") (quoting *Davis v. Homeowners of Am. Ins. Co.*, No. 05-21-00092-CV, 2023 WL 3735115, at *5 n.6 (Tex. App.—Dallas May 31, 2023, no pet.)). Accordingly, Appellant's first issue is overruled.

B. *Appellant Waived His Challenge to the Orders Dismissing His Claims*

In what we construe as his second issue, Appellant argues that the trial court erred in dismissing his claims against Appellees where his causes of action did not reference the individual Appellees by name. According to Appellant, "the only real complaint made by the Appellees (save [BMP]) is that they were not named specifically and individually throughout the Original Petition." However, upon review, we note that each of the motions included other grounds for dismissal. For example, several motions argued that Appellant "has not alleged a single fact as to Movants that would support any of the pled causes of action" or some variation thereof. The motions then went on to identify specific required elements missing from each cause of action based on Appellant's pleaded facts. Pocsik and BMP challenged Appellant's legal malpractice claim on the grounds that there was no attorney-client relationship and that, even if there had been, Pocsik—and BMP by extension—would be shielded by attorney immunity. Because Appellant does not address these arguments on appeal, we must uphold the trial court's decision on the

12

unchallenged grounds. *See Estate of Savana*, 529 S.W.3d at 592; *Parkhurst v. Office of Attorney Gen. of Tex.*, 481 S.W.3d 400, 403 (Tex. App.—Amarillo 2015, no pet.) (affirming trial court's order to dismiss pursuant to Rule 91a where appellant failed to address one ground in the motion to dismiss); *see also Shumway v. Whispering Hills of Comal Cnty. Tex. Prop. Owners Ass'n, Inc.*, No. 03-15-00513-CV, 2016 WL 4429939 (Tex. App.—Austin Aug. 16, 2016, pet. denied) (mem. op.) ("Because Shumway has not challenged every ground upon which the trial court could have relied when granting the motion to dismiss, we must affirm the trial court's decision on the unchallenged ground.").

Appellant's second issue is overruled.

C. *Appellant's Remaining Issues*

As in the trial court, Appellant appears pro se. Be that as it may, Appellant is "held to the same standards as any licensed attorney" and is "required to comply with all applicable rules of procedure." *Thompson v. Gonzales*, No. 11-21-00192-CV, 2022 WL 17997005, at *1 (Tex. App.—Eastland Dec. 30, 2022, no pet.) (mem. op.); *see Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978) ("There cannot be two sets of procedural rules, one for litigants with counsel and the other for litigants representing themselves. Litigants who represent themselves must comply with the applicable procedural rules, or else they would be given an unfair advantage over litigants represented by counsel."); *Barrientos v. Barrientos*, 675 S.W.3d 399, 404 n.2 (Tex. App.—Eastland 2023, pet. denied) ("[W]e hold pro se litigants to the same standards as licensed attorneys and require them to be familiar with and comply with all applicable laws and rules of procedure."); *Aaron v. Fisher*, 645 S.W.3d 299, 312 (Tex. App.—Eastland 2022, no pet.).

Appellant's remaining wide-ranging arguments, which we consolidate into what we have identified as issues three through ten, either do not directly relate to

the motion to dismiss, are based on evidence that we cannot consider, and/or are waived by inadequate briefing. We concisely address each.

Appellant's third issue includes an argument regarding the trial court's findings of fact and conclusions of law, focusing on a contradiction as to whether Appellant was an employee or volunteer of MCT and Midland Community Theater. Appellant's brief is insufficient on this issue. *See* TEX. R. APP. P. 38.1(i) (requiring Appellant's brief "contain clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

In Appellant's fourth issue, he seemingly argues that Pocsik was sued in both his role as Midland Community Theater's legal counsel and as a board member but fails to address the arguments put forth by Pocsik and BMP regarding attorney immunity and lack of an attorney-client relationship.

Appellant's fifth issue complains about the timing and procedure of Pocsik's and Wolf's motions to dismiss, but only insofar as they were filed after the initial set of motions, not because they were untimely. But Appellant does not provide any legal authority or analysis. *See* TEX. R. APP. P. 38.1(i). Appellant also relies on evidence outside the record. *See* TEX. R. CIV. P. 59; *Longhorn Creek*, 686 S.W.3d at 427; *Quorum Int'l*, 114 S.W.3d at 572.

Appellant's sixth issue expressly addresses an affirmative defense that Appellees pleaded—but not that they sought dismissal on—namely, immunity for a non-profit organization and its volunteers. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 84.004 (West 2017) (Volunteer Liability); *id.* § 84.006 (Organization Liability). Therefore, we need not address the issue.

Appellant's seventh issue generally argues that the Appellees ratified "bad acts" by failing to make "any attempt to correct any of the wrongs committed against Appellant." Beyond including a singular citation as to the elements of ratification,

Appellant does not include any authority to support his argument or analysis. *See* TEX. R. APP. P. 38.1(i).

Appellant's eighth issue does not address the Rule 91a dismissals, rather, Appellant argues that the Texas Workforce Commission's factors for determining whether an individual is an employee or independent contractor works to somehow prove that he and Appellees are employees, despite being unpaid volunteers. We disagree. There is no allegation of the parties being paid for their services and there is no caselaw cited by Appellant that unpaid volunteers would be employees in a like situation. These factors are merely "guiding principles to assist with the employment determination," in regard to receipt of unemployment compensation. *See Harris Cnty Appraisal Dist. v. Tex. Workforce Comm'n*, 519 S.W.3d 113, 116, 118 (Tex. 2017) (regarding paid appraisal board members seeking unemployment compensation). They are not dispositive here and they do not obviate the common law. *Id.* at 119–20, 122. Appellant claims that a right to control is dispositive; however, the Texas Supreme Court has held otherwise. *Id.* at 119. Appellant further relies on evidence outside the record. *See* TEX. R. APP. P. 38.1(i); TEX. R. CIV. P. 59; *Longhorn Creek*, 686 S.W.3d at 427; *Quorum Int'l*, 114 S.W.3d at 572.

In Appellant's ninth issue, he pontificates regarding the difference in the existence of the "Board of Trustees" and the Board of Governors—questioning whether they "split away as a sham corporation to hide resources," and the effect of its alleged conversion to the "MCT Endowment Corporation," without providing any authority in the form of relevant citations or legal analysis touching on the trial court's decision to grant the Rule 91a motion to dismiss. *See* TEX. R. APP. P. 38.1(i).

Finally, Appellant's tenth issue does not address the Rule 91a dismissals, rather, Appellant provides a conclusory claim that the theater had a duty to disclose the report regarding the investigation into the allegations against him. Again,

Appellant provides no relevant legal citations or citations to the record to support his argument. *See* TEX. R. APP. P. 38.1(i).

Accordingly, because Appellant's issues three through ten suffer the varied deficiencies identified and/or are unnecessary to the final disposition of this appeal, he presents nothing by those issues for review and we do not address them on the merits. *See* TEX. R. APP. P. 47.1, 47.4 (directing appellate courts to, if the issues are settled, write a memorandum opinion "no longer than necessary to advise the parties of the court's decision and the basic reasons for it"); *see also Horne v. Atmos Energy Corp.*, No. 11-22-00325-CV, 2024 WL 4795278, at *2–3 (Tex. App.—Eastland November 15, 2024, no pet. h.) (mem. op.) (affirming trial court's Rule 91a dismissal in similar circumstances including inadequate briefing and support on appeal).

We overrule issues three through ten.

*This Court's Ruling*

We affirm the orders of the trial court.


W. BRUCE WILLIAMS
JUSTICE


January 24, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.