**Reversed and Rendered and Opinion filed May 14, 2026**



**In The**

# Fifteenth Court of Appeals

---

### NO. 15-25-00041-CV

---

**APPRAISAL REVIEW BOARD OF THE HARRIS COUNTY APPRAISAL DISTRICT, Appellant**

**V.**

**TEXAS WORKFORCE COMMISSION AND REDONA HALL, Appellees**

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2023-38047**

## OPINION

Redona Hall was a member of the Harris County Appraisal Review Board, a governmental body that resolves disputes over property valuations for tax purposes. Due to the statutory deadlines for property tax protests, members of appraisal review boards have busy seasons and slow seasons. When Hall's hours—and, accordingly, her pay—declined during the slow season, Hall filed a claim for partial unemployment benefits with the Texas Workforce Commission (TWC). The TWC determined that she is eligible for unemployment benefits, and the district court

affirmed. We conclude that she was ineligible for benefits because during the customary slow season for ARB employees she worked her "customary full-time hours," which by statute means she "is not eligible to receive benefits" for that period.[1] We reverse and render judgment for the Board.

## BACKGROUND

Each county has an appraisal district that is responsible for appraising property for purposes of ad valorem taxation.[2] Taxpayers may contest valuation decisions before the appraisal review board (ARB), an administrative entity with statutory authority to modify property appraisal valuations.[3]

ARB members serve two-year terms,[4] and are paid by a "per diem set by the appraisal district budget for each day the board meets," as well as "reimbursement for actual and necessary expenses incurred in the performance of board functions."[5] An ARB "may meet at any time at the call of the chairman or as provided by rule of the board."[6] Because of Harris County's population size, the Harris County Appraisal Review Board—which we refer to as "the Board"—has approximately 190 members,[7] who sit on three-member panels to decide disputes.

The number of days per week that an ARB (or a panel of ARB members) meets varies throughout the year. There is a "peak protest season" that runs from

---

[1] TEX. LAB. CODE § 201.091(e).

[2] TEX. TAX CODE § 6.01(a)–(b).

[3] *Id.* § 6.41(a).

[4] *Id.* § 6.41(e).

[5] *Id.* § 6.42(c).

[6] *Id.* § 6.42(b).

[7] *See id.* § 6.41(b)(2) ("An appraisal district board of directors for a district established in a county with a population of 1.2 million or more . . . shall increase the size of the district's appraisal review board to the number of members the board of directors considers appropriate to manage the duties of the appraisal review board.").

May to October, and an "off season" that runs from November to April. The peak season commences on May 1, the date by which an appraiser must deliver its valuations to property owners.[8] Challenges to those valuations are due by May 15.[9] An ARB must hear and determine "all or substantially all timely filed protests" and approve changes to the appraisal records by August 30.[10] The Board typically decides at least 90% of appeals from May 15 to August 30 and disposes of the remainder by the end of October.

During this peak season, Board panels typically meet from three to six days per week. But during the remainder of the year, the work consists of minor statutory duties that require Board members to meet one or two days a week—with members attending on a rotating basis aimed at equalizing workdays—and once per month where the Board votes as a quorum.

Hall began serving her two-year term as a Board member in March of 2021.[11] Hall later testified that she "knew the work was seasonal" when she accepted employment, so "it was not a surprise" when she was assigned fewer hours during the off-season. In January 2022, Hall applied for unemployment benefits, claiming partial unemployment from her ARB role based on her lighter workload.[12]

The Board timely objected to Hall's application. TWC staff conducted fact-finding interviews with Hall and with the Board's counsel, and determined that Hall

---

[8]     *Id.* § 25.19(a).

[9]     *Id.* § 41.44(a)(1).

[10]    *Id.* § 41.12(a). The default deadline is July 20, but the board of directors of an appraisal district for a county with at least one million people, like Harris County, may extend the deadline to August 30. *See id.* § 41.12(c).

[11]    When Hall began her two-year term on the ARB, the per diem was $215 for a full day's work. If a member did not work past noon, the per diem changed to an hourly rate of $26.88.

[12]    *See* TEX. LAB. CODE § 201.091(b) (defining partial unemployment).

was eligible for unemployment benefits and the Board should be charged for them.[13] The Appeals Tribunal affirmed with a written opinion. The TWC's commissioners adopted the appeals panel opinion by a 2-1 vote.

The Board filed a petition for judicial review in Travis County district court. [1 CR 8]. On December 26, 2022, Hall resigned from the Board effective December 31. The trial court rendered judgment for the TWC on December 31, 2022, following a bench trial. The Board timely appealed.

## STANDARD OF REVIEW

A trial court reviews the TWC's decision on unemployment benefits "by trial de novo based on the substantial evidence rule."[14] This standard "requires the court to determine whether there is substantial evidence to support the ruling of the agency, but the reviewing court must look to the evidence presented in trial and not the record created by the agency."[15] "Substantial evidence requires only more than a mere scintilla, and 'the evidence on the record actually may preponderate against the decision of the agency and nonetheless amount to substantial evidence.'"[16]

We presume the agency's decision is supported by substantial evidence, and the "burden is on the contestant to prove otherwise."[17] Whether the contestant met this burden is an issue of law,[18] and "on review, we focus on the agency's decision

---

[13]     *See id.* § 204.021(a) ("The amount of benefits paid to a claimant for a benefit year shall be charged to the accounts of each of the claimant's employers during the claimant's base period.").

[14]     *Id.* § 212.202(a). The Administrative Procedures Act does not apply. TEX. GOV'T CODE § 2001.224.

[15]     *Harris Cnty. Appraisal Dist. v. Tex. Workforce Comm'n*, 519 S.W.3d 113, 118 (Tex. 2017) (quoting *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986)).

[16]     *Pub. Util. Comm'n of Tex. v. Tex. Indus. Energy Consumers*, 620 S.W.3d 418, 427 (Tex. 2021) (quoting *R.R. Comm'n of Tex. v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995)).

[17]     *Id.*

[18]     *Save Our Springs All. v. Tex. Comm'n on Env'tl Quality*, 713 S.W.3d 308, 320 (Tex. 2025).

4

without deference to the district court's judgment."[19] Similarly, and as always, we review statutory construction matters de novo.[20]

## DISCUSSION

The Texas Unemployment Compensation Act ("the Act") grants benefits to an "eligible individual" who is "totally unemployed" or "partially unemployed" in a particular "benefit period,"[21] defined as one week.[22] In most cases, an individual is considered totally or partially unemployed if the individual's payable wages for a benefit period fall below certain thresholds.[23] The question is whether the undisputed facts of this case support the TWC's determination that she was partially unemployed and is entitled to benefits.

The TWC argues that Hall is entitled to benefits because her wages during the off-season fell below the statutory cutoff for partial unemployment.[24] The Board argues that Hall is ineligible for benefits because: (1) her per-diem pay scheme operates as an exception to the benefits statute; (2) she worked her "customary full-time hours" during the off period which is also an exception; and (3) she effectively left the Board's employment. Because several other cases address this same issue, we address all three arguments.[25]

---

[19] *Hyde v. Harrison County*, 710 S.W.3d 403, 408 (Tex. App.—15th Dist. 2025, no pet.) (citing *Tex. Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006)).

[20] *Brazos Elec. Power Coop., Inc. v. Tex. Comm'n on Env'tl Quality*, 576 S.W.3d 374, 383 (Tex. 2019).

[21] *See* TEX. LAB. CODE §§ 207.002–.003.

[22] *See id.* § 201.011(4) ("'Benefit period' means the seven consecutive calendar days ending at midnight on Saturday and is the period for which entitlement to benefits is determined.").

[23] *Id.* § 201.091(a)–(c).

[24] The Supreme Court previously upheld the TWC's determination that members of the Board are employees of the Harris County Appraisal District. *Harris Cnty. Appraisal Dist.*, 519 S.W.3d at 128.

[25] In one case, the trial court reversed the TWC's award of benefits to an ARB member over

**Per diem wages for ARB members are not exempt from unemployment benefits**

Tax Code § 6.42(c) provides that members of an ARB "are entitled to per diem set by the appraisal district budget for each day the board meets."[26] The Board argues that this per diem scheme operates as an exception to Labor Code § 201.091 because (1) the Tax Code compensates ARB members differently than other types of property tax workers, (2) there was no partial unemployment when the Legislature enacted statutes governing ARB compensation, and (3) paying ARB members to do nothing during the off-season would be a major financial hardship.

We start with the text to determine whether both statutes can operate concurrently.[27] Under § 201.091(b), an individual is considered partially unemployed if the individual's "wages" for a benefit period "are less than the sum" of: (1) "the benefit amount the individual would be entitled to receive if the individual was totally unemployed" and (2) the greater of $5 or "25 percent of the benefit amount."[28] The Labor Code's general definition of "wages" is "all renumeration for personal services."[29] For the personal services of ARB members, Tax Code § 6.42(c) requires payment of a "per diem set by the appraisal district

---

reduced hours. *Appraisal Rev. Bd. v. Tex. Workforce Comm'n and Elizabeth Medina*, No. 2020-58669 (113th Dist. Ct., Harris County, Tex. Nov. 9, 2023). Two other cases are stayed pending disposition of this appeal. *Appraisal Rev. Bd. of the Harris County Appraisal Dist. v. Tex. Workforce Comm'n and Philip Cleland*, No. 2024-27733, (189th Dist. Ct., Harris County, Tex.); *Appraisal Rev. Bd. of the Harris County Appraisal Dist. v. Tex. Workforce Comm'n and Evelyn Barroso*, No. 2024-32157 (127th Dist. Ct., Harris County, Tex.). A fifth case settled.

26    TEX. TAX CODE § 6.42(c).

27    *Port Arthur Cmty. Action Network v. Tex. Comm'n on Env'tl Quality*, 707 S.W.3d 102, 104 (Tex. 2025) ("The text is the alpha and the omega of the interpretive process."); *see Dyer v. Tex. Comm'n on Env'tl Quality,* 646 S.W.3d 498, 511 (Tex. 2022) ("[W]e favor concurrent operation of overlapping statutes.").

28    TEX. LAB. CODE § 201.091(b).

29    *Id.* § 201.081. None of the exceptions affect our analysis here. *See id.* § 201.082 (listing exceptions).

budget for each day the board meets."[30] The text of both statutes plainly appears to include per diems as "wages" for unemployment purposes.

The Board's contrary arguments are unconvincing. First, the Board points out that the Tax Code provides different compensation schemes for other employees of an appraisal district: chief appraisers and general counsel are "entitled to compensation as provided by the budget" of the district,[31] and the chief appraiser "may employ and compensate" staff from the budget.[32] This gives an appraisal district discretion to pay monthly salaries to those personnel. But § 6.42(c) does not afford the same leeway because it ties daily compensation to board meetings, and the frequency of those meetings is dictated by the number of protests filed, not the district's discretionary budget. The Legislature exempted nine categories of payments from the Act's definition of "wages," but per diems are not one of them.[33] We must presume the omission was an intentional decision.[34] Paying other district staff differently from ARB members does not rebut that presumption.

Nor does the legislative history. The Board argues that when the Legislature created ARBs in 1979, only total unemployment benefits were available.[35] But benefits for partial unemployment actually date back to the beginning of the unemployment compensation system in 1936.[36] According to the Board, it is

---

[30]     TEX. TAX CODE § 6.42(c).

[31]     *Id*. § 6.05(d), (j).

[32]     *Id.* § 6.05(d).

[33]     TEX. LAB. CODE § 201.082(1)–(9).

[34]     *See Walgreens v. McKenzie*, 713 S.W.3d 394, 399 (Tex. 2025) ("[We] presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen.").

[35]     *See* Act of May 28, 1979, 66th Leg. R.S., ch. 841, § 6, 1979 Tex. Sess. Law. Serv 2217, 2222.

[36]     Act of Oct. 27, 1936, 44th Leg., 3d C.S., ch. 482, § 3(c) ("Weekly Benefit for Partial Unemployment"). The Board relies on *Tex. Employment Comm'n v. Southside Indep. Sch. Dist.*,

significant that when the Legislature "changed the definition of unemployment to include 'partial unemployment'" in 1995, it left the per diem compensation for ARB members unchanged. But we cannot assume that when the Legislature amended one statute it made a mistake by not amending another; we instead assume legislators knew what they were doing, just as we hope they assume the same about us.[37]

Finally, the Board argues that the burden of paying ARB members to do nothing during the winter months "falls heavily" on ARBs, especially those that decide few protests. That the consequences of applying two statutes seems unwise does not mean there is a conflict between them.[38] As we explain later, it appears that the Legislature intended to deal with this problem elsewhere in the Labor Code. Even if that were not the case, we may not rewrite § 201.091 and § 6.42(c) because we think they are unwise.

**Hall did not effectively leave employment**

Next, the Board argues that Hall voluntarily separated from her Board position, which if true would make her ineligible for benefits under § 207.045 of the Act, which provides that an "individual is disqualified for benefits if the individual left the individual's last work voluntarily without good cause connected with the individual's work."[39] Analogizing to existing TWC precedents in which seasonal or term-limited workers were held to be ineligible for unemployment benefits after

---

but that case concerned the meaning of "totally unemployed." 775 S.W.2d 733, 734 (Tex. App.—San Antonio 1989, writ denied).

[37]     *Paxton v. Annunciation House, Inc.*, 719 S.W.3d 555, 592 (Tex. 2025) ("And when construing statutes against an existing legal background, 'we presume that the legislature uses statutory language with complete knowledge of the existing law and with reference to it.'" (quoting *Amazon.com, Inc. v. McMillan*, 625 S.W.3d 101, 106–07 (Tex. 2021))).

[38]     *See Rodriguez v. Safeco Ins. Co. of Indiana*, 684 S.W.3d 789, 795 (Tex. 2024) ("[I]t is not for courts to decide if legislative enactments are wise or if particular provisions of statutes could be more effectively worded.").

[39]     TEX. LAB. CODE § 207.045(a).

voluntarily separating from their employers, the Board argues that Hall effectively consented to a volume of work that would sometimes fall below the threshold for partial unemployment. But Hall applied for unemployment benefits in January 2022 and remained employed with the Board through the end of the year. Her resignation does not affect the TWC's determination that she was entitled to benefits for the periods when she was partially employed.

**Hall Worked Her "Customary Full-Time Hours"**

Finally, the Board argues that Hall is ineligible under § 201.091(e) of the Act, which provides that "an individual is not considered unemployed and is not eligible to receive benefits for any benefit period during which the individual *works the individual's customary full-time hours*, regardless of the amount of wages the individual earns during the benefit period."[40] The TWC found that the Board appointed Hall

> to serve a two-year term working an average of 40 hours per week. Due to a lack of work, the employer reduced the claimant's hours to eight hours per week while she was still serving her term. The claimant filed an initial claim for benefits on January 17, 2022, and continued to work for the employer at the reduced schedule.

TWC urges us to treat this determination as a factual one and defer on the basis that it is supported by substantial evidence. Conversely, the Board argues that Hall's "customary full-time hours" cannot be her hours during either the peak or the off-season because her hours are determined by how frequently the Board meets.

The meaning of the phrase "customary full-time hours" is a legal question that we review de novo.[41] Because the Act does not define the term, we apply its

---

[40]     *Id.* § 201.091(e) (emphasis added).

[41]     *Brazos Elec. Power Coop.*, 576 S.W.3d at 383 ("Statutory interpretation involves questions of law that we consider de novo, even when reviewing agency decisions.").

"common, ordinary meaning" unless the text supplies a different meaning.[42] We do not construe these words in isolation but "in light of their statutory context."[43] Customary means "commonly practiced, used, or observed,"[44] and "full time" means "the amount of time considered the normal or standard amount for working during a given period."[45] Applying these definitions, the "customary full-time hours" of ARB members was much higher half the year and much lower the other half; as shown below, those *were* the normal or standard work hours. Adding up the total hours worked annually and dividing by the number of days in a year would be neither a "normal" nor "standard" number of work hours in this context. Just as we must presume from the text that the Legislature did *not* intend to exclude all persons paid per diems from the Act, we also must presume that it *did* intend to exclude from the Act persons whose hours averaged over a full year would not accurately reflect their "normal or standard work hours" on a regular basis.

Substantial evidence review *is* highly deferential in the sense that the issue is not whether the agency's decision was correct but whether the record contains a reasonable basis to support it.[46] But after reviewing the record, we find no basis at all to support the TWC's determination that Hall's customary full-time schedule for her entire term was 40 hours a week:

- The job posting for Hall's position states that service on the Board "is generally a full-time commitment during the summer and fall months and requires members to be available to serve all day, every weekday and several Saturdays from May through the end of the year. Weekday hearings are also held throughout the year. ARB members are not always

---

[42]   *Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 718 (Tex. 2024).

[43]   *Id.*

[44]   *Customary*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 308 (11th ed. 2020).

[45]   *Full Time*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 506 (11th ed. 2020).

[46]   *Harris Cnty. Appraisal Dist.*, 519 S.W.3d at 118; *see Save Our Springs All.*, 713 S.W.3d at 320.

scheduled every day but [board members] must be available to serve if needed."

- The Board's employment manual states that:
  - the Board "has no authority" over appraisal records from January 1 through May 15;
  - all protests must be determined by July 20 "or soon thereafter as is practicable";
  - "NO vacations will be approved between May 1st and October 31st" because of the importance of reducing the number of outstanding protests;
  - All protests will be heard and determined by December 31;
  - "Service on the [Board] is seasonal and dictated by the Tax Code and the number of protests requiring a hearing before the [Board]. 'Hearing season' runs from mid-May through October each year. The [Board] maximizes the number of panels conducting hearings with a majority of the [Board] membership working close to or at full time employment hours per week. At the conclusion of the "hearing season," from November up to early May (the following year), the Texas Tax Code and number of protests requiring a hearing before the [Board] falls substantially. Only a small number of panels are required to handle the workload. [Board] members will see their scheduled workdays decrease dramatically during this 'off peak' period."

- Hall testified in her fact-finding interview that the ARB does not have "consistent F/T hours each week due to the 'off peak'" period. Hall "knew the work was seasonal" when she signed on so her reduction in hours was "not a surprise."

The reduction in meetings during the off period was not an anomaly but a normal and expected part of the job of an ARB member. This record provides no reasonable basis for the TWC to conclude that Hall's customary full-time hours during the off-peak season were 40 hours per week. We conclude there is less than a scintilla of evidence supporting the TWC's decision.

# CONCLUSION

Having concluded that substantial evidence does not support the TWC's decision that Hall is entitled to partial unemployment benefits, we reverse the trial court and render judgment for the Board.


/s/      Scott A. Brister
Scott A. Brister
Chief Justice


Before Chief Justice Brister and Justices Field and Farris.